Kathy JACKSON, Plaintiff–Appellant,

v.

Larry D. JACKSON, Commissioner, Virginia Department of Social Services,

and

Richard E. Lyng, Secretary, U.S. Department of Agriculture, Defendants–Appellees.

No. 87–2183.

United States Court of Appeals, Fourth Circuit.

Argued May 2, 1988.

Decided Sept. 22, 1988.

952

Martin Wegbreit (Client Centered Legal Services of Southwest Virginia, Inc., Castlewood, Va., on brief), for plaintiff-appellant.

Thomas J. Czelusta, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., Richmond, Va., on brief) for defendants-appellees.

Before CHAPMAN and WILKINS, Circuit Judges, and GORDON, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

GORDON, Senior District Judge:

In March of 1987, the Dickenson County Department of Social Services terminated Kathy Jackson's benefits under the food stamp program. Jackson appealed this decision to the State Hearing Authority of the Virginia Department of Social Services and asked to receive food stamp benefits pending appeal. The Virginia Department of Social Services refused Jackson's request to receive benefits pending appeal and, thereafter, affirmed the termination of food stamp benefits. Jackson filed suit challenging the substantive decision to deny food stamp benefits and the procedural decision to deny benefits pending appeal. The United States District Court for the Western District of Virginia upheld the actions of the Department of Social Services. Jackson now appeals the district court decision on statutory and constitutional grounds. Finding no merit to Jackson's arguments, we affirm.

I.

Sometime prior to 1981, Eddie Jackson received a mobile home and 0.34 acres of land from his father. In 1981, Eddie Jackson deeded this property to his minor son, Henry Jackson. Presumably, Eddie Jackson made this conveyance to thwart any attempts creditors might make to obtain the property.

From March of 1981 until January of 1986, Eddie and Kathy Jackson, along with their three children, lived on Henry's property. During that time, the family received food stamp benefits. In January of 1986, Kathy Jackson separated from Eddie Jackson. Kathy and the three children relocated; Eddie continued to live on Henry's property. Shortly thereafter Kathy ap-

plied for food stamp benefits and, in May of 1986, Kathy and the three children began receiving food stamps.

## II.

Congress enacted the food stamp program "to safeguard the health and well being of the Nation's population by raising the levels of nutrition among low-income households." 7 U.S.C. § 2011 (1988); 7 C.F.R. § 271.1(a) (1987). State agencies administer the food stamp program. 7 C.F.R. § 271.4(a) (1987).

The food stamp program provides assistance to "households." *See* 7 C.F.R. § 273.1 (1987). A household desiring food stamp benefits files a completed and signed application with the applicable state agency. 7 C.F.R. § 273.2 (1987). In processing the application, the state agency interviews the household or its authorized representative and verifies certain information on the application. 7 C.F.R. § 273.2(d)-(f) (1987). If any material part of the information the applicant provides is incorrect, the agency may deny the applicant's request for food stamps. 7 C.F.R. § 273.2(b)(1) (1987).

Congress limited participation in the food stamp program "to those households whose incomes and other financial resources ... are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet." 7 U.S.C. § 2014(a) (1988). The rules regarding eligibility to participate in the food stamp program include "[r]esource eligibility standards," 7 C.F.R. § 273.8 (1987), and the statute and regulations provide that in order for a household to receive food stamp benefits, "[t]he maximum allowable resources, including both liquid and nonliquid assets, of all members of the household shall not exceed $2,000.00." 7 U.S.C. § 2014(g) (1988); 7 C.F.R. § 273.8(b) (1987). The regulations define resources broadly, and the definition specifically includes "buildings," "land," and "any other property." 7 C.F.R. § 273.8(c) (1987). The regulations then specifically enumerate the "only" resources excluded from the "resources" calculation.

The regulations require the applicable state agency to "establish a definite period of time within which a household shall be eligible to receive [food stamp] benefits." 7 C.F.R. § 273.10(f) (1987). At the end of this "certification period, entitlement to food stamp benefits ends. Further eligibility shall be established only upon a recertification based upon a newly completed application, an interview, and verification." *Id.* The regulations require the state agency to "provide each household with a notice of expiration ... prior to the start of the last month of the household's certification period," 7 C.F.R. § 273.14(b)(1) (1987), and to "approve or deny timely applications for recertification prior to the end of the household's current certification period." 7 C.F.R. § 273.14(a)(1) (1987).

If the state agency denies the application for recertification, the agency must provide the household with a "notice of denial." 7 C.F.R. § 273.10(g)(2) (1987). A notice of denial must explain "the basis for the denial, the household's right to request a fair hearing, the telephone number of the food stamp office, and, if possible, the name of the person to contact for additional information." 7 C.F.R. § 273.10(g)(1)(ii) (1987).

A household "aggrieved by any action of the State agency which affects the participation of the houshold [sic] in the Program" may request a "fair hearing." 7 C.F.R. § 273.15(a) (1987). In essence, this fair hearing is an administrative appeals procedure. If the household requests a fair hearing within the period of time provided in the notice of denial, *and* the household's certification period has not expired, the agency must allow the household to continue to receive benefits until the end of the original certification period. 7 C.F.R. § 273.15(k)(1) (1987). The regulations, however, forbid the state agency to "continue benefits ... beyond the end of the certification period unless the household has been recertified." 7 C.F.R. §§ 273.-14(a)(4) and 273.15(k)(2)(i) (1987).

## III.

In January of 1987, the Dickenson County Department of Social Services notified Kathy Jackson that her food stamp certifi-

cation period was about to expire. Thereafter, Jackson submitted an application for recertification and attended a recertification interview. At this interview, Jackson disclosed, for the first time, that her minor son Henry owned real property worth more than $2,000.00. On March 5, 1987, the Department of Social Services notified Jackson that her "application for food stamps dated February 13, 1987, has been denied because such property exceeded the allowable resource limit."

On March 13, 1987, Jackson requested a "fair hearing" concerning the denial of food stamps and requested the continuation of her food stamp benefits pending the hearing. The Virginia Department of Social Services denied the request for benefits during the appeal process, and Jackson filed a complaint against the Department of Social Services, on March 23, 1987, challenging this decision. Later, on April 22, 1987, the Department of Social Services conducted the fair hearing and found Jackson ineligible to participate in the food stamp program because Henry Jackson's ownership of real property placed the family over the food stamp resource limit. After this ruling, Jackson filed an amended complaint challenging the substantive decision to deny food stamp benefits as well as the procedural decision to deny benefits during the appeal process. On October 23, 1987, the United States District Court for the Western District of Virginia granted summary judgment in favor of the defendants. Jackson appeals.

### IV.

■ The regulations provide an exclusion from resources for assets which are "not accessible" to a household, and Jackson argues that her son's property is "not accessible." In support of her argument, Jackson notes that, under Virginia law, she must initiate a court action to attempt to sell land owned by minor. If the court approves a sale, the court retains control over the proceeds from the sale. The court then applies the proceeds for "the use and benefit" of the minor. The court may, but need not, pay these proceeds to the minor's parents; Virginia law does not require the court to pay the proceeds to the minor's parents. Jackson thus argues that her son's property is "not accessible" because she cannot take any action that will *guarantee* that she will receive the proceeds from the sale of the property. The court disagrees with Jackson's construction of "not accessible" and finds that Henry Jackson's property is *not* an excludable resource.

The regulations provide the following exclusion from resources:

> (8) Resources having a cash value which is not accessible to the household, such as but not limited to, irrevocable trust funds, security deposits on rental property or utilities, property in probate, and real property which the household is making a good faith effort to sell at a reasonable price and which has not been sold.

7 C.F.R. § 273.8(e)(8) (1987). In order to understand why Henry Jackson's property is not an excludable resource, one must first recognize that this regulation is not a model of clarity. The regulation fails to provide an overarching definition of when a resource is not accessible. Instead, the regulation provides a nonexclusive list of resources that are not accessible, and state agencies and courts must extrapolate, using the list as a guide, whether a particular unlisted resource is not accessible. Compounding this already difficult task is the fact that the examples of inaccessible resources do not lend themselves to categorization.

Looking at the list of examples of inaccessible resources, it appears that one must create three categories to classify the four examples. First, "irrevocable trust funds" and "property in probate" are not accessible because a substantial *legal* impediment prevents a household from obtaining access to these funds. Second, "real property which the household is making a good faith effort to sell at a reasonable price and which has not been sold" is not accessible because, as a *practical* matter, the household cannot use real property to buy food until the property is sold. Finally, "securi-

ty deposits on rental property or utilities" are not accessible based on *policy* considerations. The regulations do not require a household to forego its rental home or electricity or water or sewage in order to obtain food stamp benefits. This example, while advancing a laudable objective, provides particular analytical problems because it is difficult to reconcile the common understanding of the phrase "not accessible" with the example of a security deposit on a utility. A household can obviously access the security deposit on a telephone, for example, if the household cancels its telephone service. The only rational explanation for calling this resource "not accessible" is policy.

■ In view of the foregoing analysis, it is clear that the issue of whether a resource is inaccessible is not, as Jackson argues, a bright line inquiry into whether the household can take steps to *guarantee* that the household can utilize the resource to buy food. Instead, the regulation contemplates a practical, policy oriented, approach to accessibility. As a practical matter, the regulations do not require households to attempt futile actions and do not penalize households whose efforts to convert nonliquid resources into food have yet to bear fruit. The regulation only requires a household to take reasonable steps to convert property into a form that the household can use to purchase food. Moreover, if utilizing the resource to purchase food would violate a clear policy underlying the Food Stamp Act and the regulations concerning food stamp eligibility, then the resource is, again, not accessible.

In the present case, it is abundantly clear that the real property Henry Jackson owns is not an excludable resource. No substantial legal or practical impediment prevents the Jackson household from attempting to use this resource to obtain food. Jackson could easily take steps to utilize this property to obtain food. All Jackson need do is initiate a court proceeding to attempt to sell the property. During the pendency of the proceeding, the real property would not be accessible because the regulation provides that "real property which the household is making a good faith effort to sell at a reasonable price and which has not been sold" is not accessible. If the court denied Jackson's request to sell the property, the property would again not be accessible because a legal impediment would prevent Jackson from using the property to obtain food. If the court sold the property and distributed the proceeds for the care of Henry Jackson, then the Jackson household would have successfully used this resource to obtain food. If, however, the court decided to hold the funds in trust for Henry Jackson, the property might be inaccessible because § 273.8(e)(8) provides that irrevocable trust funds are not accessible.[1] In summary, if Kathy Jackson attempted to sell Henry Jackson's property, one of two possibilities would occur. The sale would produce proceeds that the Jackson household could use to buy food, or the real property or the proceeds from the sale of the real property would become not accessi-

---

1. Jackson argues that the failure to exclude Henry Jackson's real property as a resource violates the irrevocable trust provisions of the regulations. Jackson argues that if:

   (1) she decides to attempt to sell Henry's real property,
   (2) she initiates a court action to sell the property,
   (3) an offer is made,
   (4) the court approves a sale,
   (5) the court receives the proceeds from the sale, and
   (6) the court decides to hold these proceeds in trust until Henry Jackson reaches the age of eighteen,

there would be an irrevocable trust which is "not accessible" to the Jackson household. 7 C.F.R. § 273.8(e)(8) (1987).

While this argument might have merit if all the suppositions come to pass, it is obviously premature. Jackson is presenting the court with a hypothetical. This argument requires the court to speculate what the state court would do if confronted with a request to sell Henry Jackson's real property. The Constitution limits federal court jurisdiction to "cases" and "controversies," U.S. Const. art. III, § 2, and the federal courts are thus prevented from issuing opinions on abstract or hypothetical questions or from giving advisory opinions. When a controversy has yet to arise, but might arise in the future, the court may not issue an opinion on the potential controversy because that controversy is not yet "ripe" for adjudication. *United ed Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

ble, thereby enabling the Jackson household to receive food stamp benefits.

Similarly, an examination of the policies underlying the Food Stamp Act and the regulations regarding resources and eligibility to participate in the food stamp program does not indicate that the court should find Henry Jackson's property to be inaccessible.[2] The regulations "prescribe the types and allowable amounts of financial resources (liquid and nonliquid assets) an eligible household may own," 7 U.S.C. § 2014(a) (1988), and in promulgating the regulations regarding "exclusions from resources," the Secretary of Agriculture attempted to implement several Congressional policies.

First, the Secretary attempted to limit participation in the food stamp program to households with demonstrable and significant need. The Food Stamp Act explicitly limits participation in the food stamp program "to those households whose incomes and other financial resources ... are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet." 7 U.S.C. § 2014(a) (1988). To effectuate this policy, Congress directed the Secretary to promulgate regulations to "assure that a household otherwise eligible to participate in the food stamp program will not be eligible to participate if its resources exceed $2,000." 7 U.S.C. § 2014(g) (1988). Moreover, the statute and regulations impose a period of disqualification if a household knowingly transfers resources for the purpose of qualifying or attempting to qualify for food stamp benefits. 7 U.S.C. § 2015(h) (1988); 7 C.F.R. § 273.8(i) (1987).

Second, the Secretary recognized that Congress intended the food stamp program to help households achieve some minimum standard of living. The exclusions from resources thus include (1) the home and surrounding property, 7 C.F.R. § 273.8(e)(1) (1987); (2) household goods, personal effects, one burial plot per household member, and the cash value of life insurance policies, 7 C.F.R. § 273.8(e)(2); and (3) the first $4,500.00 worth of a licensed motor vehicle, 7 C.F.R. § 273.8(e)(3). Similarly, the Secretary recognized that the food stamp program coexists with other welfare programs. The regulations therefore provide exclusions from resources for (1) governmental payments designated for restoration of a home damaged in a disaster, 7 C.F.R. § 273.8(e)(7); (2) certain governmental payments specifically excluded by federal statute, 7 C.F.R. § 273.8(e)(11); (3) tax and utility subsidy payments, 7 C.F.R. § 273.8(e)(12); and (4) energy assistance payments, 7 C.F.R. § 273.8(e)(14).

Finally, the regulations reflect the desire that recipients of food stamp benefits not become permanent wards of the state. The statutes and regulations stress that food stamp recipients must, if able, seek employment. *See* 7 U.S.C. § 2015(d) (1988); 7 C.F.R. § 273.7 (1987). Accordingly, the regulations provide an exclusion from resources for property essential to employment. 7 C.F.R. § 273.8(e)(5). Similarly, the regulations exclude certain types of income-producing property. 7 C.F.R. §§ 273.8(e)(4) and (e)(6).

These policies fail to support the contention that the real property Henry Jackson owns is an excludable resource.[3] This resource could, if sold, enable the Jackson household to purchase food. In its present form, the resource does not help raise the standard of living for the Jackson household; Kathy Jackson and her family do not live on this property. Similarly, this property does not provide income to Kathy Jackson's household; the property is not essential to employment, and the record indicates that Eddie Jackson lives on the

---

**2.** The court is reticent to conclude that state agencies or courts are able to create an exclusion from resources based on policy considerations, and this opinion should not be read as empowering agencies and courts to make such decisions. Making an exclusion for policy reasons seems legislative in nature, and Congress and the Secretary are the proper parties to make these exclusions. The court compares the facts of this case with policy only to further indicate why Henry Jackson's property is not an excludable resource.

**3.** While the family lived together on the land it was an exempt resource under the eligibility requirements for food stamps. 7 C.F.R. § 273.8(e)(1) (1988).

real property and does not pay any rent. Indeed, none of the policies underlying the Food Stamp Act suggest that this court should find Henry Jackson's property to be an excludable resource.

In summation, it was and is reasonably possible for the Jackson household to use this resource to obtain food. Using this resource to buy food does not contradict any policy underlying the food stamp statutes and regulations. Kathy Jackson should convert or attempt to convert this resource into food. The law requires recipients of food stamp benefits to make reasonable efforts to become self-sufficient, and the exclusions for resources regulations do not allow a household to obtain food stamps merely because the household might have to exert some effort to convert its resources into food. Kathy Jackson refused to exert the required effort, and this court will not reward her lack of initiative.

In addition, we will not interpret the regulations in a manner that encourages subterfuge on the part of applicants for food stamp benefits. State agencies, as well as the judiciary, must heed the Congressional policy to limit participation in the food stamp program to the truly needy, and the agencies and courts must interpret the regulations, especially the accessibility regulation, to prevent households from becoming, as the district court stated, "magically eligible" for food stamp benefits. If a transfer of assets from parent to child could make a household eligible for food stamp benefits, we surmise that the "magical" increase in eligible households would astound even Houdini.

Accordingly, we hold that the district court correctly concluded, albeit for somewhat different reasons, that Henry Jackson's real property is accessible under 7 C.F.R. § 273.8(e)(8) (1987).

## V.

Jackson also contests the denial of food stamps during the pendency of her administrative appeal. Jackson notes that *recipients* of public benefits have constitutionally protected property interests in those benefits and argues that *applicants* for public assistance also have constitutionally protected property interests. Therefore, Jackson argues, the denial of food stamp benefits during the appeal process violates the due process clauses of the fifth and fourteenth amendments.

In *Holman v. Block*, 823 F.2d 56 (4th Cir.1987), this circuit addressed and rejected the argument Jackson now raises:

> In *Banks v. Block*, 700 F.2d 292 (6th Cir.1983), the Sixth Circuit conducted a thorough and detailed analysis of the property interests embodied in the Food Stamp Program as amended by Congress in 1977. Citing both the statutory language and the legislative history of the certification amendments, the Sixth Circuit concluded that "a household has no protectable property interest in the continuous entitlement to food stamps beyond the expiration of its certification period." *Banks*, 700 F.2d at 297. Although the *Banks* court recognized the recipient's right to reapply for new certification periods, it characterized the anticipated receipt of benefits beyond the certification period as "an unprotected unilateral expectation." *Id.* at 296.

*Holman*, 823 F.2d at 59. In summation, *Holman* concluded that "Congress intended the statutory entitlement created by the amended Food Stamp Act and, by extension, the property interest of the recipients to be of a limited nature." *Id.* Accordingly, we thus conclude that applicants for food stamp benefits, like Jackson herein, have no constitutionally protected property interest in those benefits.

AFFIRMED.