632 A.2d 5

**Richard and Elizabeth EHRHART, Petitioners,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 14, 1993.

Decided Sept. 10, 1993.

Reargument Denied Nov. 5, 1993.

Gail R. Shearer, for petitioners.

Sallie A. Rodgers, Asst. Counsel, for respondent.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge.

SMITH, Judge.

Richard and Elizabeth Ehrhart petition for review of the June 12, 1992 order of the Office of Hearings and Appeals (OHA) which affirmed a decision of the hearing officer that the Ehrharts were not qualified to participate in the food stamp program pursuant to the Food Stamp Act (Act), 7 U.S.C. §§ 2011–2030 (1988 & Supp.1993), and relevant regulations promulgated thereunder.[1] The issue presented on appeal is whether the Ehrharts' qualified individual retirement account (IRA) is deemed an excluded resource for purposes of determining their eligibility for the food stamp program.

On February 7, 1992, the Ehrharts applied for expedited food stamp benefits after Mr. Ehrhart was laid off from his employment. On February 12, 1992, the Venango County Assistance Office (CAO) determined that the value of the Ehrharts' qualified IRA, purchased through Prudential Insurance Company (Prudential) in 1977 because Mr. Ehrhart had no pension where he was employed, exceeded the food stamp program's $2,000 resource limit and denied their application

---

1. The Ehrharts appealed from the OHA order due to the Secretary of the Department of Public Welfare's untimely response to a request for reconsideration.

for food stamps.[2] On May 27, 1992, the hearing officer conducted a telephone conference at which a representative of the CAO testified that the Ehrharts have a qualified IRA with a death benefit option determined to be an accessible resource to the Ehrharts.

A representative from Prudential, Scott Ridgeway, testified for the Ehrharts and stated that the policy in question is a qualified tax-deferred IRA with features similar to a life insurance policy in that it contains a $5,054 death benefit option until age 69 when it matures; the policy requires the Ehrharts to make monthly payments of $25 and when they made the first $25 payment, a full life insurance contract existed for $5,054 payable to Mr. Ehrhart's beneficiary; if they took the current dividends they would receive a sum of less than $2,192; and the guaranteed cash value or principle can be obtained by loan only at six percent interest annually. Further, if the policy were cashed in, the Ehrharts would lose their life insurance coverage. Mr. Ridgeway also testified that regular IRAs do not have the same requirement for regular monthly payments; there is no borrowing structure in an IRA; and that under a regular IRA, the only amount payable to a beneficiary is the sum deposited to the account or plan.

The hearing officer determined that the policy was a qualified IRA with a death benefit option and that "$2,192 in dividends is currently available [to the Ehrharts] as is $4,135 cash value minus the 10% penalty plus tax." He further determined that the Ehrharts would lose life insurance protection if the policy were cashed in and the retirement fund would be dissolved. The hearing officer nevertheless affirmed the CAO's denial of benefits and the OHA affirmed.

On appeal to this Court, the Ehrharts do not dispute that IRAs are resources which are considered when calculating the maximum allowable amount of financial resources for purposes

2. The maximum allowable amount of financial resources for a household is $2,000.00. Financial resources include liquid and non-liquid assets. Food Stamp Act, 7 U.S.C. § 2014(g) (Supp.1993); 7 C.F.R. § 273.8(b) (1992).

of determining eligibility for food stamps. However, they argue that because their policy has a life insurance protection provision, it should be characterized as an insurance policy excludable from consideration when calculating the maximum allowable amount of financial resources under the Act. The Ehrharts further argue that the policy is an inaccessible resource because if required to liquidate it, they would lose life insurance protection.

This Court's scope of review is limited to determining whether the adjudication is in accordance with the law, whether constitutional rights have been violated, or whether findings of fact are supported by substantial evidence. *Knox v. Secretary of Department of Public Welfare*, 132 Pa.Commonwealth Ct. 463, 573 A.2d 261 (1990). Substantial evidence is such evidence which a reasonable mind can accept as adequate to support a conclusion. *Feldbauer v. Department of Public Welfare*, 106 Pa.Commonwealth Ct. 87, 525 A.2d 837 (1987). Further, in evaluating whether findings of fact are supported by substantial evidence, this Court may not find facts or reweigh the evidence. *Id.*

The Act defines resources as including:

funds held in individual retirement accounts (IRA's) ... which do not involve the household member in a contractual relationship with individuals who are not household members. In counting resources of households with IRA's ... the State agency shall include the total cash value of the account or plan minus the amount of the penalty (if any) that would be exacted for the early withdrawal of the entire amount in the account or plan....

7 C.F.R. § 273.8(c)(1) (1992). In addition, the Act provides that financial resources shall include, regardless of whether there is a penalty for early withdrawal, any savings or retirement accounts, including individual accounts. 7 U.S.C. § 2014(g)(2). The cash value of life insurance policies, however, is expressly excluded from resource eligibility. 7 C.F.R. § 273.8(e)(2).

 Review of the testimony presented by the Prudential representative supports the findings of the hearing officer that the Ehrharts' policy represents a qualified IRA with life insurance protection which they would lose if the policy were cashed in. The hearing officer's conclusion that the policy is an IRA which is a countable resource is not however supported by the findings or the record as a whole. For this reason, the hearing officer erred in his determination, as the evidence demonstrates that the policy bears the characteristics of a life insurance policy which is expressly excludable from consideration of eligibility. Even assuming that the hearing officer's determination that the policy is in fact an IRA was legally correct, the hearing officer further erred in failing to apply provisions of the Act which exclude IRAs that involve a contractual relationship such as exists here between Prudential and the Ehrharts. Mr. Ridgeway acknowledged that upon payment of the first $25, a full life insurance contract was in force between the Ehrharts and Prudential, obviously not a member of the Ehrharts' household, and for that reason, the IRA could have been excluded as a countable resource.

 The Act also provides that in counting IRA resources, the state agency shall only include the total cash value of the IRA less any penalty for early withdrawal of the entire account or plan. The Prudential representative testified that dividends of $2,192 were currently available minus a 10% penalty plus tax which if properly considered as a countable resource would produce a sum less than $2,000. This calculation would not meet the maximum allowable amount of $2,000 in financial resources under the Act. The policy's $4,135 cash value can be obtained only by loan at six percent interest and therefore does not constitute an available or accessible financial resource.

The Ehrharts further contend that the policy is not accessible to the household as a resource and therefore should not be counted since they would lose life insurance protection if they are required to liquidate the IRA portion of the policy. This specific contention need not be addressed because of the

Court's determination that the policy in question is not a countable resource for purposes of the food stamp program. Suffice it to say however that under provisions of the Act which define circumstances under which a resource is inaccessible to the household, it would appear that where the cost of a forced sale or liquidation of a resource "would be relatively great," that resource should be excluded as inaccessible. 7 U.S.C. § 2014(g)(5); *Jackson v. Jackson,* 857 F.2d 951, 955 (4th Cir.1988).

▮ The food stamp program is designed to assist eligible low-income households by increasing their food purchasing power, and the Act is to be construed liberally to promote the general welfare and health and well-being of the nation's population by raising the nutrition levels of those households. The Act does not require low-income households to liquidate everything they own to qualify for food stamps in times of need. Considering the evidence in this record, to force the Ehrharts to liquidate their policy which would net them less than $2,000 in dividends and to simultaneously lose life insurance protection for the household would violate policies underlying the Act. *Jackson.* Hence, an examination of the record and applicable provisions of the Act make it abundantly clear that the OHA erred in affirming the decision of the hearing officer which was contrary to law and not supported by the record. Accordingly, the order of the OHA is reversed and this case is remanded to the Department of Public Welfare to grant food stamp benefits to the Ehrharts.

## ORDER

AND NOW, this 10th day of September, 1993, the order of the Office of Hearings and Appeals is reversed and this case is remanded to the Department of Public Welfare to grant food stamp benefits to petitioners.

Jurisdiction relinquished.