JiBROWN, Judge.
Roseland Krider and her four children received financial assistance through Aid to Families with Dependant Children (“AFDC”) and food stamps under the Food Stamps Program. Because a daughter received a settlement in a tort action, the Louisiana Department of Social Services (“DOSS”) terminated the family’s food stamps and found them ineligible to receive AFDC benefits for ten months. An administrative hearing officer agreed with the determination made by DOSS. Ms. Krider judicially challenged the administrative decision and the district court reversed, ordering all benefits retroactively reinstated. DOSS now appeals. We affirm.
FACTS
Roseland Krider, a divorced mother, and her four minor children reside in Bossier Parish, Louisiana. The children’s father is an absentee whose last known address was prison in Cottonport, Louisiana. To support her family, Ms. Krider applied for and received state-managed public assistance in the form of AFDC payments and food stamps.
The appellant, a state agency, is responsible for the administration of AFDC and food stamp monies in Louisiana. Ms. Krider and the four children are labeled an “assistance unit” for these two programs. We will refer to them, however, as a family.
In 1992, one of Ms. Krider’s daughters, Bertina, age 7, was injured while playing on a neighbor’s trampoline. A personal injury lawsuit followed and in February 1994 the court approved a settlement for $35,000. Part of the proceeds was invested in an annuity worth $22,000 payable to Bertina over a four year period after her eighteenth birthday.
After deducting the cost of the annuity, legal and medical expenses, Roseland Krider received a check for $8,738.46. Of this, $7,000 was invested in ^certificates of deposit in the name of “Roseland Krider as Custodian for Bertina E. Krider under the Louisiana Uniform Transfer to Minors Act.” The remaining funds ($1,738.46) were placed into a checking account. This case concerns only the $8,738.46 which was paid to Ms. Krider as Bertina’s natural tutrix. DOSS has never asserted that the surrender value of the annuity was income or a resource.
Ms. Krider timely notified the Bossier Parish Office of Family Support (“OFS”) concerning receipt of the settlement proceeds. The settlement was given no consideration, however, until May 1994 when Ms. Krider visited the OFS for a redetermination of her family’s eligibility for assistance. Because it believed that the $8,738.46 was available income and an accessible resource, the OFS determined that the Krider family would be ineligible for ten months to receive AFDC and were no longer eligible for food stamps.
Ms. Krider requested a “fair hearing,” which in essence is an administrative appeal procedure. A hearing officer conducted an evidentiary proceeding and concluded that the agency was correct. Specifically, the hearing officer opined:
The argument ... that the lump sum ($8,738.46) ... was unavailable for use by other family members ... is not supported by the documents of record. Ms. Krider was ordered by the court to place the funds for Bertina in an interest bearing account, but there is no court order which limits the access of Roseland Krider to the funds. The Certificates of Deposit are resources of a household and assistance unit member (Bertina) ... could be converted to cash by Roseland Krider for the benefit of the household, and they would not be considered exempt as a trust....
Ms. Krider sought judicial review of the hearing officer’s decision. The district court *879 judge reviewed the record and found that the funds in question belonged to a minor and were under the administration of her natural tutrix, that they could not lawfully be spent without a court order, and even then, the funds were only for the support and education of Bertina. Thus, the trial court found that the funds were not legally available to the household and should not have been considered as income or a resource available for the support of the family. 13The trial judge ordered reinstatement of public assistance retroactively to the date of suspension.
DISCUSSION
The AFDC and food stamp programs are distinct and employ varying terminology. For AFDC purposes, Bertina’s personal injury award is considered nonrecurring unearned lump sum income. Federal rules and state policies generally require that the receipt of such income by any member of a family must be considered in determining eligibility for AFDC benefits. 45 C.F.R. § 233.20(a)(3)(ii)(F) (1995). The monthly need standard for a five person family in a non-urban parish is set at $889. In the instant case, Bertina’s settlement plus a flat grant of $259 was divided by $889 to determine the ineligibility period of 10 months.
For food stamp purposes, Bertina’s award is categorized as a resource which generally must be considered in determining eligibility for food stamp benefits. 7 C.F.R. §§ 273.8(c)(1), 273.9(c)(8) (1995). Resources are assets or possessions which can be converted to cash. Resource limits for all households are $2,000. 7 C.F.R. § 273.18 (1995).[1] If any member of the family has resources that exceed $2,000, then the household does not qualify for food stamps.
The categorization of Bertina’s award as income for AFDC or as a resource for food stamps is not at issue. Rather, the crux of the instant dispute is whether this income or resource, managed by a minor’s natural tu-trix and subject to court supervision in accordance with our Code of Civil Procedure, is available or accessible to the family for current use.

\J. AFDC

State administered AFDC programs must adopt and follow policies in accordance with federal guidelines. Federal rules specify the amount and type of real and personal property, including liquid assets, that a family may retain and still receive assistance. 45 C.F.R. 233.20(3) (1995) et seq.
While personal injury awards are considered lump sum nonrecurring income, some elements of the award are exempt from AFDC eligibility determinations. The exempt portions are limited to the amount of the award used to offset expenses. 45 C.F.R. § 233.20(3)(ii)(F) (1995). Accordingly, the OFS considered only the balance of Bertina’s award after deducting the costs of the annuity, fees and expenses.[2] Our review of the relevant federal rules disclosed no other exemption. 45 C.F.R. § 233.20(a)(3)(ii)(D) (1995). The inquiry now shifts to whether Bertina’s award was available for current use.
Determining whether this nonrecurring income is available to the family requires a common sense or practical approach. Funds actually used, even contrary to law, for the support of any family member would be available. Funds that have no legal impediment to their use for the support of any family member would likewise be considered available. 45 C.F.R. § 233.20(a)(3)(ii)(D) (1995).
Bertina’s funds were invested pursuant to a court order directing that they be placed in an interest bearing account for her benefit. As her mother and natural tutrix, Roseland Krider was charged with the prudent management of Bertina’s funds. Appellant places great significance on the fact that the court order directing that Bertina’s funds be placed in an interest bearing account did not require court approval for their withdrawal by her tutrix/mother. This significance, however, is misplaced.
*880 |sThe functions, powers, and duties of a tutrix are spelled out in our Code of Civil Procedure. La. C.C.P. art. 4262 provides that a tutrix shall take possession of, preserve, and administer a minor’s property. Any action by a tutrix which affects the interest of a minor requires court approval. La. C.C.P. art. 4271. In particular, an investment, reinvestment, or withdrawal of funds of a minor may be made only with court approval. La. C.C.P. art. 4270. Thus, significant legal intervention is a prerequisite to the lawful use of a minor’s funds when managed by a tutrix.
The fact that the district court judgment ordering that Bertina’s funds be invested is silent concerning the need for court approval to withdraw or reinvest the funds does not relieve Roseland Krider of the duties and formalities required by the law of tutorship. A tutrix is potentially liable for the improper use of a minor’s funds and third parties who deal with tutors without a judicial order confirming the tutor’s actions do so at their risk. La. C.C.P. art. 4262; Chesneau’s Heirs v. Sadler, 10 Mart. 726 (La.1822).
These formalities are a legal limitation or impediment to the use of these funds and exist not because of a court order, but by operation of law. This, however, does not dispose of the case. The critical inquiry is whether Bertina’s tutrix/mother must make a bona fide effort to obtain court approval to invade the corpus before the family can qualify for AFDC. To require the tutrix to make application to the court to cash Bertina’s certificates of deposit before qualifying for AFDC creates an irrebuttable presumption that the tutrix and court will make these funds available for the family’s support and maintenance. The imposition of such a prerequisite removes from the tutrix and court their discretion to determine what use of any surplus would be in the beneficiary’s best interest. DOSS’ regulation in this case is in conflict with Louisiana law concerning the tutrix’s and court’s responsibilities and discretion. Cunningham v. Toan, 762 F.2d 63 (8th Cir.1985); Riddick v. D’Elia, 626 F.2d 1084 (2d Cir.1980); Johnson v. Harder, 512 F.2d 1188 (2d Cir.1975), cert. denied, 423 U.S. 876, 96 S.Ct. 149, 46 L.Ed.2d 109 (1975).[3]

II. Food Stamps

The consideration of Bertina’s award for food stamp purposes requires a similar analysis. A lump sum personal injury award, after deducting expenses, is classified as a resource and absent an exception must be considered in determining eligibility for food stamps. Federal regulations provide the following exclusion:
(8) Resources having a cash value which is not accessible to the household, such as but not limited to, irrevocable trust funds, security deposits on rental property or utilities, property in probate, and real property which the household is making a good faith effort to sell at a reasonable price and which has not been sold.
7 C.F.R. § 273.8(e)(8) (1995). Obviously, the listed assets deemed inaccessible do not include personal injury awards; however, the instant funds cannot be superficially viewed as just another personal injury award. Because of Bertina’s age, the settlement proceeds were placed in trust and governed by the statutory law of tutorship. The restrictions imposed by law have the direct effect of limiting the legal availability and use of the funds. In light of the true nature of the resource in question, the above exclusion warrants closer scrutiny.
In attempting to apply the resource exclusion contained in 7 C.F.R. 273.8(e)(8) (1995), the Federal Fourth Circuit observed:
17[T]his regulation is not a model of clarity. The regulation fails to provide an overarching definition of when a resource is inaccessible. Instead, the regulation provides a nonexclusive list of resources that are not accessible, and state agencies and *881 courts must extrapolate, using the list as a guide, whether a particular unlisted resource is not accessible....
Looking at the list of examples of inaccessible resources, it appears that one must create three categories to classify the four examples. First, “irrevocable trust funds” and “property in probate” are not accessible because a substantial legal impediment prevents a household from obtaining access to these funds.... (Emphasis in original.)
Jackson v. Jackson, 857 F.2d 951, 954 (4th Cir.1988). The court’s analysis is directly applicable to the instant case. As noted above, funds belonging to a minor and managed by a tutrix are subject to investment or withdrawal only upon approval of the court, and, as already noted, the state agency cannot require the tutrix to seek court permission to invade the corpus as a prerequisite to apply for food stamps. A substantial legal impediment prevents the Krider household from obtaining lawful access to Bertina’s funds. Thus, they should be exempt from eligibility considerations, except as noted, to the extent that they are actually applied to the needs of the family, which includes Berti-na.[4]

III. Actual Use of Funds

After arguing that the trial court’s review must be confined to the record of the administrative hearing, appellant states that it presented “concrete evidence” at its motion for new trial regarding the apparent mismanagement of Bertina’s funds. In brief, appellant states that, after the district court reversed the ruling of the | shearing officer, it obtained proof that Bertina’s tutrix/mother used all but $248.51 of Bertina’s money to retire a loan obligation.
The proof offered at this motion for new trial was simply a Regions Bank money order for $248.51 with the notation “balance after loan payoff.” Only counsel’s argument identified this document with Bertina’s funds.
We need not address the propriety of this evidentiary submission or its weight because the issue is not whether Ms. Krider violated her fiduciary duties, but whether Bertina’s funds were actually used for her or the family’s support. Ironically the argument of DOSS’ attorney at the new trial hearing was:
[W]hat we had feared would happen has in fact happened.... These funds have been squandered and spent, no there’s nothing left for Bertina.... There’s only $248 that’s left. The remaining (money) ... was spent by Ms. Krider for things other than Bertina. (Emphasis added).
While Ms. Krider’s attorney argued as follows:
Ms. Krider lost the funds because she pledged those funds to get money on which ... for her family to live on ... it (funds) was taken (by the bank) because the state cut off the funds to the mother for support. ... They (state) made her steal the child’s money ... because they deprived her of AFDC and food stamps ... and it was a question of steal the child’s money or starve.
Although both sides argued contrary to their client’s best posture, argument is not evidence and we find that no evidence indicates that these funds were applied to the needs of the family.
CONCLUSION
Personal injury settlement proceeds awarded to a minor to be managed by her tutrix in accordance with the law of tutorship are not currently available or accessible for the support and maintenance of the family. As such, they should not be considered in determining the family’s eligibility for AFDC payments and food stamps except to the extent that they are actually used to support the family. The |9district court decision in favor of plaintiffs is affirmed. Costs to the *882 extent allowed by law are assigned to appellant.
AFFIRMED.

. However, the resource limit is $3,000 where one household member is 60 years or older.

. As noted, whether the cost of the annuity is exempt is not at issue in this appeal.

. But see Williams v. Raiford, 976 F.2d 942 (5th Cir.1992), which states:
As desirable as it may be for this child to have a trust fund which she might use for various purposes when she attains majority, we cannot agree that she may maintain that trust fund while her family languishes in poverty and is supported wholly or in part by the public purse.
Id. at 944.

. This opinion is premised entirely upon a recognition of the strictures imposed by the institution of tutorship and their relevance with respect to federal rules governing funds availability and accessibility. We are cognizant of the difficult issues posed by the use of funds belonging to a particular minor for the mutual benefit of her necessitous family or even use of such funds in a maimer which indirectly provides a benefit to the family as a whole. Nonetheless, these issues are not before us.