# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

D.C. and J.C., in their             :   **CASE SEALED**
own right and as Parents and     :
Natural Guardians of Z.C. a minor,   :
                        Petitioners   :
                                    :
             v.                :   No.  13 C.D. 2021
                                    :   Submitted:  March 10, 2022
Department of Human Services,   :
                       Respondent   :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE STACY WALLACE, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                     FILED:  May 10, 2022


      D.C. and J.C. (Parents), parents of Z.C. (Child), petition for review of an order of the Department of Human Services (DHS), Bureau of Hearings and Appeals (BHA) that affirmed the decision of Keystone First Health Plan (Keystone First) denying Parents' request to increase from one to two home health aides (HHA) for Child's care. Additionally, DHS requests to dismiss Parents' petition as moot. For the following reasons, we deny DHS's Application to Dismiss Parents' petition as moot and affirm the decision of the BHA.

The facts of this case, as adopted by the BHA, are undisputed. Child is an 11-year-old male who has various needs due to multiple diagnoses. *See* Certified Record (C.R.), Item No. 4 at 200. Child carries a genetic mutation and is diagnosed to be within the Autism Spectrum. *Id*. at 200-01. Additionally, Child is diagnosed with Unspecified Intellectual Disabilities, Attention-Deficit/Hyperactive Disorder (ADHD), Mixed Expressive-Receptive Language Disorder, Unspecified Hyperkinetic Syndrome of Childhood, and a seizure disorder. *Id*. at 200-01. Due to these conditions, Child requires assistance with all activities of daily living (ADLs) including bathing, grooming, and dressing. *Id*. at 201. Child also has behavioral issues, which require that he be under constant supervision due to outbursts, aggression, destructive behaviors, lack of awareness of danger, and risk of elopement. *Id*.

Child attends the Camphill School and is a full-time resident in the life-skills support program. *Id*. At school, he has an Individualized Education Program (IEP), which includes physical therapy, occupational therapy, and speech therapy. *Id*. He also has a one-on-one aide who assists him with ADLs. Reproduced Record (R.R.) at 262a. During breaks from school, Child resides with Parents, who both work full time outside of the home. C.R., Item No. 4 at 200.

Child is serviced by Keystone First, which is a Physical Health Managed Care Organization (PH-MCO). Keystone First is one of multiple Managed Care Organizations (MCOs) contracted with DHS to administer HealthChoices Program (HealthChoices) benefits to Medical Assistance (MA) recipients.

On July 15, 2020, Dr. Amy Siegel submitted a request to Keystone First for skilled nursing and an HHA for Child Monday through Friday 8:00 a.m. to 6:00 p.m. and Saturday and Sunday 9:00 a.m. to 3:00 p.m. R.R. at 9a. Keystone First

approved the request for the HHA and denied the request for skilled nursing as Child's physical needs did not require skilled nursing. C.R., Item No. 4 at 201.

On July 23, 2020, Dr. Maurice Rozwat (Rozwat) sent a request to Keystone First indicating that Parents were requesting HHA hours be increased to have two HHAs provided during the previously approved times. R.R. at 19a. In his request, Rozwat indicated that Child requires qualified staff to assist with his ADLs and basic hygiene and noted Child's elopement risk, lack of awareness of danger, self-injurious behaviors, aggression, and need for constant supervision. *Id.*

Keystone First denied the request finding that a second HHA was not medically necessary. R.R. at 22a. Keystone First noted that the requested services were to address Child's behavioral needs rather than his physical needs and that this was not a support or service provided by an HHA. *Id.*

Parents filed a grievance with Keystone First, which was denied. R.R. at 3a-8a. Parents then appealed Keystone First's decision to the BHA.

On November 4, 2020, the BHA held a hearing and subsequently affirmed Keystone First's decision.

Parents now petition this Court for review and raise two issues. First, Parents assert that the BHA failed to properly apply the DHS regulations covering HHA services.[1] Second, Parents assert that the Administrative Law Judge's (ALJ) findings of fact categorizing Child's needs as behavioral rather than medical are unsupported by substantial evidence. We disagree.

---

[1] In Parents' Brief, Parents specifically frame the issue by asserting that the regulations covering HHA services "mandate reimbursement." *See* Pet'rs' Br. at 10. However, the record does not indicate that Parents have made payment for a second HHA thereby requiring reimbursement. Rather, based on the record, Parents are requesting coverage for a second HHA. Therefore, we address this issue as Parents' assertion that the BHA failed to properly apply the DHS's regulations regarding HHA service coverage.

3

Our standard of review of a BHA order limits us to determining whether the decision is in accordance with applicable law, whether the decision is supported by substantial evidence, or whether constitutional rights were violated. *Casey Ball Supports Coordination, LLC v. Dep't of Hum. Servs.*, 160 A.3d 278, 283 (Pa. Cmwlth. 2017) (citing *Cambria Cnty. Home & Hosp. v. Dep't of Pub. Welfare*, 907 A.2d 661, 667 (Pa. Cmwlth. 2006)).

First, we address Parents' argument that the BHA failed to properly apply the DHS regulations covering HHA services.

Under Pennsylvania's MA program, DHS provides payment to MCOs for recipients' health services. 55 Pa. Code § 1229.21. An MCO member is eligible for all services covered by the contract between DHS and the MCO. 55 Pa. Code § 1229.22. The regulation specifies that DHS will only make payment where the medical service or provider is, among other things, deemed medically necessary. 55 Pa. Code § 1101.66(a).

The regulation's policy, which is consistent with the HealthChoices Physical Health Agreement (Agreement), at 25 (version effective January 1, 2021),[2] defines "medically necessary services" as services that will, or are reasonably expected to: "prevent the onset of an illness, condition, injury, or disability[,] . . . reduce or ameliorate the physical, mental, or developmental effects of an illness, condition, injury, or disability[, or] . . . assist the recipient to achieve maximum functional capacity in performing daily activities[.]" 55 Pa. Code § 1101.21a(1)-(3).

Where personal care services are medically necessary, DHS covers the cost of HHA services. 55 Pa. Code § 1249.54. HHA covered services include

---

[2] The Agreement is available on DHS's portal: https://www.dhs.pa.gov/HealthChoices/HC-Services/Documents/HC%20Agreement%202021.pdf (last visited May 9, 2022).

assistance with bathing, personal hygiene, ambulation, or exercise, administration of medications, and retraining the recipient in self-help skills. 55 Pa. Code § 1249.54(b)(1)-(5). The regulation specifically excludes domestic services, housekeeping, and childcare from HHA covered services. 55 Pa. Code § 1249.54(c).

At the hearing, Dr. Pamela McCarter (McCarter), Pediatric Medical Director for Keystone First, testified for DHS. When asked about HHA services, McCarter stated that HHAs assist with ADLs and went on to explain:

> ADLs are – that's an acronym for activities of daily living. So things like washing, wiping after using the bathroom, washing your hands afterwards, brushing your teeth, getting showered, getting dressed, things of that nature, feeding. They're all included in [HHA] level of care, as well as physically assisting . . . . That would include things like transferring from a wheelchair to a bed or into a stander. Changing diapers in children that are older and beyond the diaper kind of age. Things that you would not expect a normal babysitter to do. Those are the kinds of things that a[n] [HHA] does. It's the hands-on physical care of a . . . child under our program . . . who has a disability that precludes them [sic] from being able to do their own developmentally appropriate activities of daily living.

R.R. at 217a. When asked whether an HHA provides behavioral interventions to address behaviors like headbanging or aggression, McCarter stated, "No . . . in their normal course of work with a developmentally delayed individual, [an HHA] will have to redirect sometimes their [sic] behavior . . . but . . . that is not their primary focus, and they [sic] are not trained specifically for that." R.R. at 218a. McCarter explained that there are behavioral health specialists available who work "in conjunction with the physical care that the [HHA] provides." R.R. at 224a. She

5

noted that HHAs and behavioral health specialists "have two distinct areas of the scope of their practice, but they support each other." R.R. at 224a.

McCarter specifically addressed her opinion that Child's physical care needs require one HHA:

> Q. Does it remain your opinion that it is medically necessary for this member to have one Home Health Aide provided by Keystone First?
>
> A. Yes. He eats a normal diet. He's incontinent. He wears Pull-Ups. And so he needs help with his activities of daily living and basic hygiene. He does need supervision. But that should be adequate for a single [HHA] to care for those specific needs.
>
> I should add that we do, on occasion approve two [HHAs] for a member, but in my experience, those cases are for a member who is physically unable to be managed by one person safely. So a very large adolescent male with cerebral palsy or muscular dystrophy who is not able to be moved by just one person because of the weight, for instance, and the size, in those instances, we have provided either a Skilled Nurse or . . . two [HHAs]. But those are the exception rather than the rule. And it's because the physical care can't be provided by one single individual. In [Child's] case, his physical care appears to be not that extensive. It's the behaviors that make him difficult to care for [sic].

R.R. at 231a-32a. On cross-examination, McCarter was specifically asked about the difference between physical versus behavioral needs. McCarter explained:

> [Child's] behaviors are physical acts like headbanging, biting, maybe pushing. They are physical acts, but they're a behavior that he's exhibiting. They are not physical needs that a[n] [HHA] would be asked to address such as going to the bathroom in a diaper, not being able to brush their teeth, not being able to wipe themselves after they use the toilet.

6

R.R. at 239a.

Here, the ALJ specifically addressed 55 Pa. Code § 1249.54 regarding HHA payment conditions in his decision and properly considered the relevant testimony regarding HHA services. *See* C.R., Item No. 4. In its decision, the ALJ outlined the personal care services covered by HHA services as addressed in the regulations. *Id.* The ALJ concluded that the services covered by HHAs do not include behavioral services but are limited to physical care services. The regulations support the ALJ's decision. Therefore, the ALJ did not err as a matter of law.

The second issue raised by Parents is that the ALJ's findings of fact in denying Parents' request for a second HHA as "behavioral," not "medical," are unsupported by substantial evidence. Parents contend that the ALJ's determination was unsupported by substantial evidence and based on a capricious disregard of the evidence. Parents specifically assert that the ALJ's decision was based on a capricious disregard of the evidence because the ALJ "made no meaningful findings concerning witness credibility[,]" *see* Pet'rs' Br. at 16, and "ignore[d] Dr. Rozwat's opinion that [Child] needs two HHAs to be available at home to supervise and care for him while [Parents] are at work." *See* Pet'rs' Br. at 17. Parents also assert that the ALJ "ignored the persuasive testimony of [the nurse] that it would be very difficult for a single HHA to follow [Child's] plan of care, including providing or making meals for Child." Pet'rs' Br. at 17.

In appeals to the BHA, the ALJ, as fact-finder, assesses witness credibility and evidentiary weight. *See Arcurio v. Dep't of Pub. Welfare*, 557 A.2d 1171, 1173 (Pa. Cmwlth. 1989); *Birdsboro & Birdsboro Mun. Auth. v. Dep't of Env't Prot.*, 795 A.2d 444, 448 (Pa. Cmwlth. 2002). Where the record contains substantial evidence and the ALJ's determinations are the result of weighing the

7

evidence and resolving issues of credibility and conflicting testimony rather than the result of capriciously disregarding evidence, we will not disturb an ALJ's decision. *See Bennett v. Unemployment Comp. Bd. of Rev.*, 33 A.3d 133, 136 n.3 (Pa. Cmwlth. 2011); *Macioce v. Zoning Hearing Bd. of the Borough of Baldwin*, 850 A.2d 882 (Pa. Cmwlth. 2004). A capricious disregard of the evidence occurs where the ALJ fails to resolve conflicts in the evidence, fails to make essential credibility determinations, or completely ignores overwhelming evidence without comment. *Hinkle v. City of Phila.*, 881 A.2d 22, 27 (Pa. Cmwlth. 2005). We must decide whether the ALJ willfully or deliberately ignored evidence that any reasonable person would have considered to be important. *Wise v. Unemployment Comp. Bd. of Rev.,* 111 A.3d 1256, 1263 (Pa. Cmwlth. 2015). In making that determination, this Court may not find facts or reweigh the evidence. *Erhart v. Dep't of Pub. Welfare*, 632 A.2d 5, 7 (Pa. Cmwlth. 1993).

As outlined above, McCarter testified to Child's physical care needs versus Child's behavioral care needs. McCarter explained that Child's behavioral issues are not physical needs that could appropriately be addressed by an HHA but are behavioral needs. R.R. at 232a. She noted that HHAs are not trained in the management of behavioral needs and that they are present to provide physical care services. R.R. at 232a. She specified that, in this case, Child's physical care needs are not "that extensive[,]" and that it is his behaviors that present a challenge in his care. R.R. at 232a.

Parents argue that a second HHA is required because Child "cannot use the bathroom, make his own meals, change his diapers or otherwise care for himself," Pet'rs' Br. at 12. While an HHA provides these services, the evidence in the record supports the BHA's finding that based on Child's physical needs, these

services can be provided by one HHA. McCarter specifically testified that Child's physical care needs could be met by one HHA. R.R. at 232a. At school, Child has a one-to-one aide who assists him with ADLs. R.R. at 262a. The record does not support the argument that two HHAs are required to tend to Child's physical care needs. Conversely, the record supports the ALJ's finding that Child's needs are behavioral and require services other than what an HHA can supply.

The ALJ considered the evidence of record and indicated that Parents' argument is contradicted by the records and testimony that were submitted. *See* C.R., Item No. 4. The ALJ acknowledged the nurse's testimony and found that even her testimony as to Child's behaviors supported DHS's argument that Child's actions are "behavioral." For the reasons set forth above, we conclude that the ALJ's findings are not a capricious disregard of the evidence. Rather, the BHA's decision is supported by substantial evidence.

This leads us to the final issue, whether Parents' petition is moot now that Child has been enrolled in the Person/Family Directed Support (PFDS) waiver administered by DHS's Office of Developmental Programs. *See* Appl. to Dismiss, dated October 6, 2021; Pet'rs' Answer to Appl. to Dismiss, dated October 13, 2021. The doctrine of mootness requires that an actual case or controversy exists "at all stages of review[.]" *In Re Gross*, 382 A.2d 116, 119 (Pa. 1978). It is well settled that we do not "render decisions in the abstract or offer purely advisory opinions[.]" *Harris v. Rendell*, 982 A.2d 1030, 1035 (Pa. Cmwlth. 2009) (citation omitted). Additionally, a legal question may be rendered moot on appeal due to intervening factual changes that occur during the pendency of the case. *Gross*, 382 A.2d at 119-20.

We note that while Parents filed the petition for review in January 2021, it is undisputed by the parties that as of July 22, 2021, Child is authorized to receive in-home and community support services through the PFDS waiver. *Id.* Through the PFDS waiver, Child is approved for 10 hours per day, 7 days per week of in-home (and community support) services for the 13 weeks per year that Child is home from school. *Id.* These habilitation services assist individuals with acquiring, maintaining, and improving the skills necessary to live in the community and address the safety needs of the individual. *Id.* DHS argues that because Child is now approved to receive services from two individuals, one HHA to assist Child with ADLs, and another provider who can address his safety needs, this renders the pending petition for review moot as Parents' concerns are being addressed by having two service providers in the home. *Id.* We disagree that the issue is moot.

The issue before this Court is regarding coverage for a second HHA, and this issue is still ripe for review. For this reason, this decision resolves a controversy and is not merely advisory. As outlined above, per the regulations, HHAs provide specific physical care services. We note that Parents' request was not for an additional support person, but specifically for a second HHA. This distinction is important as the issue in this case is not whether Child needs additional services, as the ALJ agreed that Child needs services, but whether a second HHA's services are required for his physical care needs. The services that have been approved through the PFDS waiver is not an HHA. Parents continue to request a second HHA despite Child being approved for the PFDS waiver. Thus, while intervening factual changes occurred during the pendency of this appeal, the factual changes were not relevant to the issue regarding coverage for a second HHA. Therefore, the issue before this Court is not moot.

10

For the reasons set forth above, we conclude that the BHA's decision is in accordance with the law and supported by substantial evidence. Additionally, the issue before the Court is not moot. Accordingly, we deny DHS's Application to Dismiss the Petition for Review and affirm the decision of the BHA.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

D.C. and J.C., in their           :     **CASE SEALED**
own right and as Parents and     :
Natural Guardians of Z.C. a minor,  :
                Petitioners  :
                          :
          v.              :     No.  13 C.D. 2021
                          :
Department of Human Services,   :
             Respondent  :


# O R D E R


**AND NOW**, this 10th day of May 2022, Respondent's Application to Dismiss the Petition for Review For Mootness is **DENIED**, and the December 16, 2020 Final Administrative Action Order of the Department of Human Services, Bureau of Hearings and Appeals, is hereby **AFFIRMED**.


 

_____
STACY WALLACE, Judge