**IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT**

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| REHABILITATION AND COMMUNITY PROVIDERS ASSOCIATION, AND WESTMORELAND COUNTY BLIND ASSOCIATION, AND ASSOCIATED PRODUCTION SERVICES, INC., AND UNITED CEREBRAL PALSY OF CENTRAL PENNSYLVANIA, INC. AND SCOTT HOWARD SCHWARTZ BY AND THROUGH KAREN NEWMAN AND LINDA S. SCHWARTZ, CO GUARDIANS, AND RYAN BRETT BY AND THROUGH HIS GUARDIAN FRANCIS BRETT, | : : : : : : : : : : : : | No. 13 MAP 2021<br><br>Appeal from the Order of the Commonwealth Court at No. 543 MD 2019 dated February 3, 2021.<br><br>ARGUED: March 8, 2022 |
| Appellants | : : : : | |
| v. | : : : : | |
| DEPARTMENT OF HUMAN SERVICES OFFICE OF DEVELOPMENTAL PROGRAMS, | : : : : : : | |
| Appellee | : : | |

**OPINION**

**JUSTICE MUNDY**                                   **DECIDED: September 29, 2022**

This is a direct appeal from a Commonwealth Court order dismissing a petition for review for failure to exhaust administrative remedies. The underlying dispute involves the adequacy of state funding for community participation support services, which are designed to help individuals with autism or intellectual disabilities live independently. The primary issue on appeal relates to the exhaustion requirement.

Medicaid is the nation's primary health insurance program for low-income and high-need Americans. Enacted in 1965 and set forth at Title XIX of the Social Security Act, *see* 42 U.S.C. §§ 1396–1396w-6, Medicaid is jointly funded by the federal and state governments. Although a state's participation in Medicaid is optional, once a state elects to participate it must comply with Title XIX and applicable regulations. *See Alexander v. Choate*, 469 U.S. 287, 289 n.1 (1985) (citing *Harris v. McRae*, 448 U.S. 297, 301 (1980)). Medicaid is administered at the federal level by the Centers for Medicare & Medicaid Services ("CMS"), an agency of the United States Department of Health and Human Services. In Pennsylvania, it is administered by the state Department of Human Services ("DHS") and is known as Medical Assistance.

For states that participate in Medicaid, the federal government requires coverage for certain mandatory populations and services, but it also authorizes waiver programs, or simply "waivers" for short, which give states flexibility to operate outside federal rules. *See Medicaid: An Overview* at 1 (Congressional Research Service, updated Feb. 22, 2021), available at https://sgp.fas.org/crs/misc/R43357.pdf (last viewed June 21, 2022). Waivers must be approved by the CMS. *See generally Casey Ball Supports Coordination, LLC v. DHS*, 160 A.3d 278, 280 n.1 (Pa. Cmwlth. 2017).

One category of waivers, authorized by Section 1915(c) of the Social Security Act, 42 U.S.C. § 1396n, falls under the umbrella term Home and Community Based Services ("HCBS"). These waivers allow states to meet the needs of eligible individuals receiving long-term care supports and services in their home or community rather than in an institutional setting such as an intermediate care facility.[1]

---

[1] HCBS waivers reflect "a major shift in thinking in the field of developmental disabilities. Emphasis is now on people living in their own homes, controlling their own lives and being an integral part of their home community." *Intermediate Care Facilities for Individuals with Intellectual Disabilities* (United States Centers for Medicare & Medicaid Services

Within DHS, the Office of Developmental Programs ("DHS/ODP"), the appellee herein, is responsible to fund and supervise the provision of services associated with HCBS waivers, most notably for present purposes, community participation support ("CPS") services. CPS services are "intended to . . . support community life secondary to employment as a primary goal." *Individual Support Plan Manual for Individuals Receiving Targeted Support Services, Consolidated or P/FDS Waiver Services or Who Reside in an ICF/ID*, at 59 (DHS/ODP Feb. 23, 2018).

In Pennsylvania, CPS services are provided pursuant to three HCBS waivers: the Consolidated Waiver, the Person/Family Directed Support Waiver, and the Community Living Waiver. *See DHS Long-Term Care Handbook* § 489.4 (Nov. 1, 2018).[2] The CPS services themselves are supplied by vendors, or providers, who in turn are reimbursed by DHS/ODP pursuant to rates developed and published by DHS.

In March 2019, DHS issued ODP Announcement 19-024, indicating it intended to change the rate structure for CPS services provided under the HCBS waivers. Whereas CPS services had previously been divided into 54 distinct types, the new payment scheme instead listed 15 types,[3] and for each type it included a reimbursement rate based on a 15-minute unit of service, a method known as a "fee schedule." Announcement 19-024 invited interested parties to submit comments on the proposed fee schedule.

---

2021), available at https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/CertificationandComplianc/ICFIID (last viewed June 21, 2022).

[2] DHS/ODP works with individuals who have a diagnosis of autism or an intellectual or developmental disability to provide needed supports and services for both the individual and family members, and the waivers are designed to help such persons live more independently in their homes and communities. *See id.*

[3] The types of CPS service are distinguished by the practitioner-to-recipient ratio, whether the service is provided in the community or in a facility, and whether the service is considered "enhanced" – for example, "CPS Facility 1:7 to 1:10," "CPS Community 2:1," "CPS Community 2:1 Enhanced," etc. *See* Announcement 19-024, at 4-5.

After the comment period, DHS issued ODP Announcement 19-061 on May 24, 2019, explaining it received comments from more than 3,000 interested persons and organizations. As a result, it adjusted its prior assumptions concerning full-time versus part-time staff use, staff wages, and training costs, and it increased the fee-schedule rates for three of the 15 types of CPS services. The following day, DHS published its Final Notice of Fee Schedule Rates for CPS Services (the "Final Notice") in the Pennsylvania Bulletin, incorporating the changes reflected in Announcement 19-061. *See* 49 Pa. Bull. 2685 (May 25, 2019). The Final Notice explained that the fee schedule was developed in accordance with 55 Pa. Code Chapter 51 (relating to the "Office of Developmental Programs Home and Community-Based Services") using a market-based approach,[4] and it expressed DHS's expectation that CPS services would be funded "at a level sufficient to ensure access and encourage provider participation, while at the same time ensuring cost effectiveness and fiscal accountability." *Id.*

That view of the matter apparently did not garner universal public agreement because on November 13, 2019, Rehabilitation and Community Providers Association (the "Association"), Westmoreland County Blind Association, United Cerebral Palsy of Central Pennsylvania, Associated Production Services ("APS"), Scott Howard Schwartz, and Ryan Brett filed a first amended petition for review in the nature of a complaint/equity action for declaratory and injunctive relief (the "Petition"), challenging the legality of the

---

[4] The provisions of Chapter 51 were issued under Sections 201(2), 403(b), and 403.1 of the Human Services Code, Act of June 13, 1967, P.L. 31, No. 21 (set forth at 62 P.S. §§ 101-1503). *See* 62 P.S. §§ 201(2), 403(b), 403.1. Section 403.1 was added by the Act of June 30, 2011, P.L. 89, No. 22 ("Act 22"). DHS has since rescinded Chapter 51 and replaced it with Chapter 6100. *See* ODP Announcement 19-129, at 2 (Oct. 4, 2019).

DHS was previously known as the Department of Public Welfare, and the Human Services Code was known as the Public Welfare Code. *See* Act of Sept. 24, 2014, P.L. 2458, No. 132; 62 P.S. § 103 (changing the department's name); Act of Dec. 28, 2015, P.L. 500, No. 92, § 1 (changing the code's name).

new fee schedule and alleging the new reimbursement rates were too low to sustain the provision of CPS services to eligible recipients. The Petition, which was directed to the Commonwealth Court's original jurisdiction, named DHS/ODP as the sole respondent. In terms of parties, the Petition explained that the Association is an advocacy organization representing over 350 members who provide services relating to mental health, drug and alcohol dependency, developmental disabilities, physical disabilities, child brain injuries, and the like; Westmoreland County Blind Association and United Cerebral Palsy of Central Pennsylvania are service providers and members of the Association; APS is a high-tech contract packager staffed by 500 developmentally disabled adults and is a member of the Association; and Schwartz and Brett are developmentally-disabled adults who receive CPS services through APS.

In the Petition, the current appellants (hereinafter, "Petitioners") averred the Final Notice amounted to an unpromulgated regulation as it created a binding norm and failed to comply with the Commonwealth Documents Law,[5] the Regulatory Review Act,[6] and the Commonwealth Attorneys Act.[7] They also alleged it was not submitted to CMS for approval and incorporation into the HCBS waivers prior to the July 1, 2019, effective date. Additionally, they stated the Final Notice's fee schedule did not reflect reasonable costs relating to CPS service delivery sufficient to ensure access, encourage provider participation, and promote provider choice as required by federal law and the federally-

---

[5] Act of July 31, 1968, P.L. 769, No. 240. Part of this law has been consolidated, see 45 Pa.C.S. §§ 501-907, and part remains unconsolidated. *See* 45 P.S. §§ 1102-1602. *See generally Mercury Trucking, Inc. v. Pa. Pub. Util. Comm'n*, 55 A.3d 1056, 1072 n.6 (Pa. 2012) (discussing the consolidation of Pennsylvania's statutory law).

[6] Act of June 25, 1982, P.L. 633, No. 181, reenacted and amended by Act of June 30, 1989, P.L. 73, No. 19 (as amended 71 P.S. §§ 745.1-745.14).

[7] Act of Oct. 15, 1980, P.L, 950, No. 164 (as amended 71 P.S. §§ 732-101 – 732-506).

approved HCBS waivers. Thus, Petitioners sought a declaration, per the Declaratory Judgments Act,[8] that the Final Notice was an unpromulgated regulation inconsistent with the federally approved payment methodologies, as well as an injunction prohibiting DHS/ODP from implementing the new rates and directing the agency to establish rates sufficient to meet reasonable provider costs. The following day, Petitioners moved for partial summary judgment in the form of an order declaring the Final Notice to be an unpromulgated regulation.

DHS/ODP filed an answer asking the court to deny Petitioners' request for partial summary judgment. It also filed preliminary objections asserting: (a) Westmoreland County Blind Association, United Cerebral Palsy of Central Pennsylvania, and APS (the "Provider Petitioners") failed to exhaust their administrative remedies; (b) similar claims were then pending in an administrative appeal initiated by APS before DHS's Bureau of Hearings Appeals (the "BHA");[9] (c) Schwartz and Brett (the "Individual Petitioners") and the Association lacked standing; (d) Petitioners generally lacked standing to seek relief on behalf of other providers delivering services under the HCBS waivers; and (e) Petitioners failed to state a claim on which relief could be granted because (i) the Final Notice did not violate the Commonwealth Documents Law, the Regulatory Review Act, the Commonwealth Attorneys Act, or any federal statute or regulation, (ii) Petitioners lacked a privately-enforceable right to challenge DHS's administration of a program operating under a waiver granted by the federal government, and (iii) Petitioners did not allege the elements necessary for injunctive relief.

---

[8] Act of July 9, 1976, P.L. 586, No. 142, § 2 (as amended 42 Pa.C.S. §§ 7531–7541).

[9] *See* 67 Pa.C.S. §§ 1101-1106 (governing appeals to the BHA and requiring the BHA, acting through DHS, to promulgate regulations establishing procedures for such appeals); *see also* 55 Pa. Code Chapter 41 (relating to Medical Assistance provider appeal procedures).

Petitioners responded with their own set of preliminary objections in the form of a motion to strike DHS/ODP's preliminary objections on the grounds that they failed to conform to the pleading requirements set forth in the rules of civil procedure, and they lacked adequate specificity. *See* Pa.R.C.P. Nos. 1019(a), 1028(a)(2), (3).[10]

A three-judge panel of the Commonwealth Court addressed both sets of preliminary objections in a memorandum decision. *See Rehab. & Cmty. Providers Ass'n v. DHS/ODP*, 2021 WL 359444 (Pa. Cmwlth. Feb. 3, 2021) ("RCPA"). First, the court overruled Petitioners' preliminary objections, stating the adequate-factual-basis requirement only applies to pleadings setting forth a cause of action or defense – *i.e.*, a complaint, a petition for review, or an answer with new matter – and not to preliminary objections. The court also indicated DHS/ODP had sufficiently apprised Petitioners and the court of the agency's bases for objecting to the Petition. *See id.* at *4. Petitioners do not presently challenge that aspect of the Commonwealth Court's ruling.

Turning to DHS/ODP's preliminary objections, the court agreed, with respect to the first objection, the Provider Petitioners failed to exhaust their administrative remedies, as required by case precedent, before seeking judicial review. *See, e.g., Canonsburg Gen. Hosp. v. Dep't of Health*, 422 A.2d 141, 144-45 (Pa. 1980). Initially, the court observed the allegations in the Petition itself recognized the availability of an administrative avenue for challenging the sufficiency of the reimbursement rates, namely, via an appeal to the BHA. With that said, the court acknowledged a narrow exception to the exhaustion requirement whereby a court may consider the merits of a claim for declaratory or injunctive relief if a substantial constitutional question is raised and the administrative remedy is inadequate. It clarified, however, that the exception only applies where the

---

[10] Meanwhile, Petitioners also moved for expedited consideration on the basis that they were struggling to maintain their programs under the Final Notice's new rates. That motion was granted.

plaintiff raises a facial constitutional challenge to the statute or regulation in question, as opposed to its application in a particular case.

Here, the court concluded, the Provider Petitioners were attacking the fee schedule in the Final Notice, which was produced by application of the legal authority cited in that notice, *i.e.*, 55 Pa. Code Chapter 51; hence, as they were challenging a specific application of DHS's administrative regulations, they were not advancing a facial constitutional challenge.[11] As well, the court found Petitioners failed to demonstrate the administrative remedy was inadequate. The court explained an administrative remedy is inadequate if (1) it does not allow for adjudication of the issue raised, or (2) pursuing such a remedy would result in irreparable harm.

As to the first of these criteria, the court observed it was undisputed the Provider Petitioners had the right to appeal the sufficiency of their reimbursement rates to the BHA, and that one of them had already filed an action with the BHA challenging the legality of the Final Notice and the new reimbursement rates. *See RCPA*, 2021 WL 359444 at *7 & n.5. The court also noted the BHA had authority to determine whether the Final Notice was an unpromulgated regulation or otherwise violated state or federal law, and to provide declaratory relief. *See id.* at *7 & n.6 (quoting, *inter alia*, 55 Pa. Code §§ 41.42(a), (b) (superseded), 41.31(4) (superseded)). The court concluded the Provider Petitioners could not "sidestep the exhaustion requirement simply by including a claim for declaratory or injunctive relief in their Petition for Review." *Id.* at *8.

As to the second criterion – that irreparable harm will result if the plaintiff is forced to pursue an administrative appeal – the court acknowledged the Provider Petitioners'

---

[11] The court rejected the concept, advanced by Petitioners, that they were mounting a facial constitutional attack upon Act 22, *see supra* note 4, which they alleged was the real source of DHS's authority to issue the Final Notice. Petitioners claimed the enactment embodied an unconstitutional delegation of legislative authority to DHS. This argument is discussed below.

contention that the delay associated with administrative hearings before the BHA would result in their having to curtail or eliminate their CPS programs in light of the Final Notice's rates. Still, the court concluded, that type of harm did not render the administrative remedy inadequate, and moreover, the Provider Petitioners could recover the allegedly deficient funds via a successful agency appeal. Accordingly, the court sustained DHS/ODP's preliminary objection relating to the Provider Petitioners, which asserted they failed to exhaust their administrative remedies. *See id.* at *8-*9.

Although that preliminary objection only pertained to the Provider Petitioners, and not the Association or the Individual Petitioners, the court nonetheless ended its analysis at that point, indicating it need not reach DHS/ODP's other preliminary objections, and dismissed the Petition as to all Petitioners. *See id.* at *9.

Petitioners appealed to this Court, questioning whether the Commonwealth Court erred by dismissing the Petition on the basis that the Provider Petitioners failed to exhaust administrative remedies. *See generally* 42 Pa.C.S. § 723(a) (giving this Court exclusive appellate jurisdiction in matters originally commenced in the Commonwealth Court). Conceptually, the issue includes two subsidiary questions, namely, were the Provider Petitioners required to exhaust their administrative remedies before going to court (as the Commonwealth Court held), and if so, was the Petition properly dismissed in its entirety notwithstanding that the preliminary objection in question only pertained to the Provider Petitioners and not the Association or the Individual Petitioners. In answering these questions, we consider whether the lower court abused its discretion or committed an error of law. *See Machipongo Land & Coal Co. v. Dep't of Envtl. Res.*, 648 A.2d 767, 769 (Pa. 1994), *vacated in part on other grounds by Machipongo Land & Coal Co. v. Dep't of Envtl. Res.*, 676 A.2d 199 (Pa. 1996). As to any question of law, our review is *de novo* and plenary. *See Ladd v. Real Estate Comm'n*, 230 A.3d 1096, 1103 (Pa. 2020).

Petitioners argue the Commonwealth Court erred in finding the Provider Petitioners were required to exhaust their administrative remedies before seeking judicial review.[12] They claim they fall within the exception to the exhaustion requirement for facial or "frontal" constitutional attacks because they alleged in the Petition that the true source of DHS's authority to issue the Final Notice was the Human Services Code as amended by Act 22, and Act 22 represented an improper delegation of legislative power to DHS, contrary to Article II, Section 1 of the state charter. *See* PA. CONST. art. II, § 1 (vesting the legislative power of Pennsylvania in the General Assembly).[13]

Our review of the Petition reveals that Petitioners' constitutional averment, which was only mentioned in a single paragraph out of 112 total, was collateral to their primary legal theory. Petitioners primarily alleged the Final Notice was invalid because it failed to comply with Pennsylvania administrative law and the rates themselves did not reflect costs actually incurred by efficiently- and economically-run providers during fiscal year 2019-2020, thus violating federal and state law such as the Mental Health and Intellectual Disability Act of 1966,[14] which obligates DHS/ODP to subsidize intellectual disability services. *See* Petition ¶ 46 (citing 50 P.S. § 4201).

---

[12] The opening and reply briefs for the appellants are filed on behalf of all Petitioners.

[13] The nondelegation rule is a "natural corollary," based on the separation-of-powers doctrine, to the constitutional grant of legislative power to the General Assembly. *W. Phila. Achievement Charter Elementary Sch. v. Sch. Dist. of Phila.*, 132 A.3d 957, 963 (Pa. 2016). The rule requires the General Assembly to make the "basic policy choices" involved in all legislation, although that body may delegate to other entities the authority to execute and administer the law. *See Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 877 A.2d 383, 417 (Pa. 2005) (quoting *Blackwell v. State Ethics Comm'n*, 567 A.2d 630, 636-37 (Pa. 1989)). Thus, the law "must contain some 'intelligible principle to which the person or body authorized to act is directed to conform.'" *Protz v. WCAB (Derry Area Sch. Dist.),* 161 A.3d 827, 834 (Pa. 2017) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)) (brackets omitted).

[14] Act of Oct. 20, 1966, P.L. 96, Special Sess. No. 3 (as amended 50 P.S. §§ 4101-4704).

The Petition describes how the Final Notice came into being by making the following narrative-style averments: before 2009, DHS/ODP discharged its duties under the Mental Health and Intellectual Disability Act of 1966 by funding and supervising county programs providing residential services, vocational services, and day program services; eventually, however, DHS/ODP centralized these programs at the state level instead of working through county agencies; ultimately, in 2011 the Legislature passed Act 22 as emergency financial legislation which amended the Human Services Code; the amendments authorized DHS/ODP to establish or revise provider payment rates, fee schedules, reimbursement models, or payment methodologies for particular services; in relation to expenditures for fiscal year 2011-2012, the amendments also specified that any such actions needed to ensure that DHS/ODP's expenditures maintained budget neutrality could be accomplished via regulations promulgated pursuant to Section 204(1)(iv) of the Commonwealth Documents Law, and those regulations would be exempt from Section 205 of that law, Section 204(b) of the Commonwealth Attorneys Act, and the Regulatory Review Act;[15] based on this authorization, DHS/ODP promulgated the

---

[15] The statutory provision setting forth this exemption, which was added to the Human Services Code by Act 22, provides, in relevant part:

> (a) The department is authorized to establish rules, regulations, procedures and standards consistent with law as to the administration of programs providing assistance, including regulations promulgated under subsection (d), that do any of the following: . . . (4) Establish or revise provider payment rates or fee schedules, reimbursement models or payment methodologies for particular services. . . .
>
> * * *
>
> (c) Notwithstanding any other provision of law, the department shall take any action specified in subsection (a) as may be necessary to ensure that expenditures for State fiscal year 2011-2012 for assistance programs administered by the department do not exceed the aggregate amount appropriated for such programs by the act of June 30, 2011 (P.L. 633, No. 1A), known as the General Appropriation Act of 2011. The department shall

provisions of 55 Pa. Code Chapter 51 without submitting them to the Independent Regulatory Review Commission ("IRRC") in accordance with the Regulatory Review Act; and finally, eight years later, relying on Chapter 51 as the operative legal authority, DHS/ODP published the Final Notice as described above. *See* Petition ¶¶ 46-58.

Within this narrative section, Petitioners quote the text of Act 22. *See id.* ¶ 51. They also assert that legislative power is limited to the General Assembly, and an agency's authority must be conferred by clear and unmistakable legislative language. *See id.* ¶ 52. They describe the normal process by which regulations (as contrasted with mere policy statements) are promulgated, and they allege the Final Notice constitutes an unpromulgated regulation. Thus, they express that one of the main legal issues in this case is whether the Final Notice is saved by the special delegation of authority in Act 22 relieving DHS/ODP of the need to comply with Pennsylvania administrative agency law. *See id.* ¶¶ 59-66. In support of their position that it is not, Petitioners note: (1) the

---

seek such waivers or Federal approvals as may be necessary to ensure that actions taken pursuant to this section comply with applicable Federal law. . . .

(d) For purposes of implementing subsection (c), and notwithstanding any other provision of law, . . . the secretary shall promulgate regulations pursuant to section 204(1)(iv) of the act of July 31, 1968 (P.L. 769, No. 240) [45 P.S. § 1204], referred to as the "Commonwealth Documents Law," which shall be exempt from the following: (1) Section 205 of the "Commonwealth Documents Law." [45 P.S. § 1205] (2) Section 204(b) of the act of October 15, 1980 (P.L. 950, No. 164), known as the "Commonwealth Attorneys Act." [71 P.S. § 732-204] (3) The act of June 25, 1982 (P.L. 633, No. 181), known as the "Regulatory Review Act." [71 P.S. §§ 745.1-745.14]

(e) The regulations promulgated under subsection (d) may be retroactive to July 1, 2011, and shall be promulgated no later than June 30, 2012.

62 P.S. § 403.1.

delegation of authority to DHS lacks legislative standards beyond budget neutrality and, as such, violates the non-delegation rule, *see id.* ¶ 67; (2) the delegation of authority to DHS is limited to fiscal year 2011-2012, and hence, it cannot properly be interpreted as authorizing DHS/ODP to set rates for the 2019-2020 fiscal year, *see id.* ¶¶ 68-73; and (3) the Final Notice represents an attempt to alter policy goals concerning the types of service to be provided under the HCBS waivers rather than a good-faith attempt to comply with the budget-neutrality standard embedded in Act 22, *see id.* ¶ 74. In this latter regard, Petitioners circle back to their original contention that the Final Notice should have been issued in compliance with the Regulatory Review Act. Because it was not, they maintain, it constitutes "an unpromulgated regulation and must be struck." *Id.*[16]

As we read the Petition, its central averments are that the Final Notice is an unpromulgated regulation and its provisions are inconsistent with legal mandates requiring adequate funding for the services involved. Petitioners concede the "operational legal authority" for the relevant portions of the Final Notice is stated to be 55 Pa. Code Chapter 51. *See id.* ¶ 58. As Chapter 51 was, in turn, promulgated pursuant to Act 22, they attempt to undercut such authority by claiming Act 22 only applied to a different fiscal year, it did not authorize a change in how the types of services to be funded should be prioritized, and in any event, it violates the non-delegation rule because its only legislative standard is budget neutrality. *See* Brief for Appellants at 27.

This is not the kind of facial attack on the enabling statute's constitutionality which is generally required to bypass statutory remedies. *See Beattie v. Allegheny Cty.*, 907 A.2d 519, 523 (Pa. 2006); *Commonwealth ex rel. Nicholas v. PLRB*, 681 A.2d 157, 161

---

[16] Beyond this, Petitioners include allegations suggesting the Final Notice (including the process by which it was issued) is inconsistent with federal law and the federally-approved HCBS waivers, including the waivers' requirement that rates be sufficient to ensure access to services and promote provider choice. *See id.* ¶¶ 75-102.

(Pa. 1996); *Borough of Green Tree v. Bd. of Prop. Assessments, Appeals & Review of Allegheny Cty.*, 328 A.2d 819, 825 (Pa. 1974) (plurality); *see also Kowenhoven v. Allegheny Cty.*, 901 A.2d 1003, 1010 (Pa. 2006) (explaining the exception "correlates more closely with a facial challenge to the constitutional validity" of the enabling statute "than with a claim addressing the manner in which the enactment is administered"). Instead, it is a single, somewhat ancillary, averment in a 112-paragraph petition which, at its core, challenges the legal adequacy of the new fee schedule – in other words, the legality of the manner in which Act 22 has presently been applied. It thus fits comfortably within the description of a "mere allegation" of unconstitutionality which our cases have deemed insufficient to invoke equity jurisdiction. *See Rochester & Pittsburgh Coal Co. v. Bd. of Assessment & Revision of Taxes of Indiana Cty.*, 266 A.2d 78, 79 (Pa. 1970) (explaining that a "mere allegation" of unconstitutionality is insufficient to escape the administrative-exhaustion rule).

This understanding of the Petition is reinforced by the relief requested: a declaration that the Final Notice is "an unpromulgated regulation" which is "inconsistent with the federally approved payment methodology," together with "an injunction enjoining DHS/ODP from its implementation and requiring DHS/ODP to implement a new or different system which is in compliance with state and federal law and establishes rates sufficient to meet reasonable provider costs." Petition ¶¶ 107, 112. The Petition does not seek a declaration that Act 22 is unconstitutional or, for that matter, that any other facet of DHS's enabling legislation, *i.e.*, the Human Services Code, is unconstitutional. This case is similar to *Delaware Valley Convalescent Center v. Beal*, 412 A.2d 514 (Pa. 1980), in which a skilled nursing facility sought to challenge a Medical Assistance reimbursement ceiling established by DHS, on the basis that it was not reasonably cost related and thus a clear violation of federal law, without first invoking the administrative

appeal process within DHS. *See id.* at 515. Noting the policy basis of the exhaustion requirement, including that the agency should be allowed to develop the factual background and apply its expertise before the courts get involved,[17] this Court referred to the need for factual development at the administrative level to determine whether the reimbursement rate was inadequate. *See id.* at 516. The Court found no reason to create an exception to the exhaustion requirement, *see id.* at 516, and there is likewise no reason to do so here.

Furthermore, the exhaustion rule applies unless Petitioners also demonstrate their statutory remedy is inadequate. *See Nichols*, 681 A.2d at 161 (citing *Shenango Valley Osteopathic Hosp. v. Dep't of Health*, 451 A.2d 434, 438 (Pa. 1982)); *cf. Kowenhoven*, 901 A.2d at 1010 (suggesting whether exhaustion is required depends largely on whether the legal remedy afforded can be a viable avenue for relief). Here, the Provider Petitioners had an administrative avenue to challenge the new fee schedule in accordance with 55 Pa. Code Chapter 41, *see* 55 Pa. Code § 51.157 (superseded by 55 Pa. Code § 6100.41), and they have failed to show they cannot obtain the relief they asked for in the Petition through those proceedings. In fact, the Commonwealth Court observed it was undisputed that at least one of the Provider Petitioners had already filed an administrative appeal with the BHA challenging the new reimbursement rates, and that that appeal was pending when the court ruled on DHS/ODP's preliminary objections. *See RCPA*, 2021 WL 359444, at *7. The court continued by highlighting that the BHA has authority to determine whether the Final Notice is an unpromulgated regulation or otherwise violates state or federal laws, *see id.* at *7 (citing *Millcreek Manor v. DPW*, 796

---

[17] "The premature interruption of the administrative process restricts the agency's opportunity to develop an adequate factual record, limits the agency in the exercise of its expertise and impedes the development of a cohesive body of law in that area." *Shenango Valley Osteopathic Hosp. v. Dep't of Health*, 451 A.2d 434, 438 (Pa. 1982) (citing *McKart v. United States*, 395 U.S. 185, 193-94 (1969)).

A.2d 1020, 1025 (Pa. Cmwlth. 2002) (recognizing administrative agencies may rule on the validity of their own guidelines and policy statements, including whether they constitute an unpromulgated regulation)), and that, under DHS's regulations, a Medical Assistance provider may seek declaratory relief in an appeal before the BHA. *See id.* (citing 55 Pa. Code § 41.42(a), (b); 55 Pa. Code § 41.31(4); 1 Pa. Code § 35.19).

Petitioners do not challenge these aspects of the Commonwealth Court's ruling.[18] Instead, they observe an inadequate administrative remedy does not qualify as one that has to be exhausted, and the adequacy of their administrative remedy should not have been assumed absent factual development. Thus, they argue the Commonwealth Court should not have sustained DHS/ODP's preliminary objection because there were factual issues that needed to be resolved first. *See* Brief for Appellants at 36 & n.9 (citing, *inter alia*, *Feingold v. Bell of Pa.*, 383 A.2d 791, 794 (Pa. 1978)).

A court considering a preliminary objection may take evidence and create a factual record, *see* Pa.R.C.P. 1028(c)(2), but it need not do so if it has sufficient information to rule on the objection. *See Wimble v. Parx Casino & Greenwood Gaming & Entm't*, 40 A.3d 174, 179 (Pa. Super. 2012); *Leahy v. Pa. Liquor Control Bd.*, 551 A.2d 1153, 1156 (Pa. Cmwlth. 1988). Petitioners do not spell out exactly what the factual issue before the Commonwealth Court was, beyond generally suggesting factual development was needed to ascertain whether the administrative remedy was adequate. Still, it appears their argument relates to the time required for the BHA to rule, as they quote a portion of the Petition alleging BHA appeals take at least two years which, they assert, "is too late to maintain program participation." Brief for Appellants at 36-37 (quoting Petition ¶ 15).

It is true an administrative remedy is considered inadequate if the plaintiff makes a clear showing that it would suffer irreparable injury during pursuit of that remedy. *See*

_____

[18] Petitioners acknowledged in their Petition that they "have the right to appeal the sufficiency of their rates to the [BHA]." Petition ¶ 15.

*Nicholas*, 681 A.2d at 161. However, where an administrative process exists to resolve a dispute, as it does here, a court of equity is not justified in exercising jurisdiction solely on the basis that it may reach a more expeditious resolution. *See Fastuca v. L.W. Molnar & Assocs.*, 10 A.3d 1230, 1246 (Pa. 2011) (quoting *Mercy Hosp. of Pittsburgh v. Pa. Human Relations Comm'n*, 451 A.2d 1357, 1359 (Pa. 1982)). If the Provider Petitioners prevail in their claim and recover the allegedly deficient funds, any monetary shortfall they experience will be temporary. This does not constitute the type of irreparable injury that may excuse a party from the exhaustion rule. *Accord Riley v. Boxa*, 542 N.W.2d 519, 522 (Iowa 1996) ("Ordinarily, monetary losses caused by either administrative proceeding expenses or the deprivation of earnings are insufficient to constitute irreparable injury of substantial dimension."). It follows, then, that even if a factual issue remained concerning how long the Provider Petitioners would have to wait for a BHA determination, that issue was immaterial to DHS/ODP's preliminary objection that the Provider Petitioners failed to exhaust their remedies. The Commonwealth Court thus acted within its discretion in ruling on the preliminary objection without first obtaining an evidentiary record.

In light of the above, we will affirm the Commonwealth Court's ruling to the extent it sustained the first preliminary objection forwarded by DHS/ODP. As explained, that objection only pertained to the Provider Petitioners, a limitation the Commonwealth Court acknowledged in its decision. *See RCPA*, 2021 WL 359444, at *5. The court, however, dismissed the Petition as to all Petitioners. *See id.* at *9. It unfortunately did not provide any explanation for why it dismissed the Petition as to the Association and the Individual Petitioners, who were not the subject of DHS/ODP's first preliminary objection – which, again, was the only preliminary objection on which the court ruled.

We believe the Commonwealth Court should have the opportunity, in the first instance, to pass fully upon the remaining preliminary objections and, if any material facts

are at issue in relation to them, to "establish a record adequate for its determination and . . . appellate review." *Commonwealth by Creamer v. Monumental Props., Inc.*, 329 A.2d 812, 828 (Pa. 1974). This course of action will also allow us to benefit from the Commonwealth Court's analysis should the matter again be appealed to us. *Cf. Lawrence on behalf of Lawrence v. Chater*, 516 U.S. 163, 167 (1996) (*per curiam*) (explaining, in the context of the Court's discretionary docket, that an order granting, vacating, and remanding to the lower court for further proceedings conserves the Supreme Court's resources, highlights an issue the lower court did not fully consider, and assists the Supreme Court "by procuring the benefit of the lower court's insight before we rule on the merits"), *quoted with approval in Tribune-Review Publ'g Co. v. DCED*, 859 A.2d 1261, 1266-67 (Pa. 2004).[19]

Accordingly, for the reasons set forth above, the Commonwealth Court's order is affirmed insofar as it sustained the preliminary objection asserting that the Provider Petitioners failed to exhaust their administrative remedies and dismissed the Petition as to those parties. The order is vacated in all other respects, and the matter is remanded for further proceedings consistent with this opinion.

---

[19] Where this Court has determined that a threshold issue did not impede merits review, it has sometimes proceeded, in the interests of judicial economy, to undertake a merits disposition rather than remanding. *See, e.g.*, *Parsowith v. Dep't of Revenue*, 723 A.2d 659, 663 (Pa. 1999). Here, however, there are preliminary objections which are still pending, and hence, it is as yet unclear whether merits review is appropriate. Further, and as noted, there may be factual issues surrounding threshold issues such as standing. *Compare, e.g.*, Brief for Appellee at 26 (arguing the Individual Petitioners' alleged harm stemming from their inability to receive services from their providers is too remote to constitute an "immediate" interest for standing purposes), *with* Reply Brief for Appellants at 7 (contending the Individual Petitioners have standing as they will certainly "lose their services" due to the Final Notice's allegedly inadequate rates). *See generally Citizens Against Gambling Subsidies v. Pa. Gaming Control Bd.*, 916 A.2d 624, 627 (Pa. 2007) (recognizing that matters of standing may involve factual questions). For all of these reasons, we find it most prudent at this juncture to remand for further proceedings.

Chief Justice Baer and Justices Todd, Donohue, Wecht and Brobson join the opinion.

Justice Dougherty files a concurring opinion.