# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Casey Ball Supports      :
Coordination, LLC,          :
            Petitioner    :
                       :
      v.                 :    No. 308 C.D. 2016
                       :    Submitted: November 4, 2016
Department of Human Services,    :
            Respondent    :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY JUDGE BROBSON          FILED: April 18, 2017

Petitioner Casey Ball Supports Coordination, LLC (Petitioner), petitions for review of an order of the Chief Administrative Law Judge of the Department of Human Services (Department), Bureau of Hearings and Appeals (BHA), dated February 1, 2016, which adopted the recommendation of an Administrative Law Judge (ALJ), thereby denying Petitioner's appeal. Petitioner had appealed from a decision of the Department's Office of Development Programs (ODP), denying Petitioner's application for enrollment as a provider under the Consolidated Waiver and the Person/Family Directed Support (P/FDS) Waiver Programs. We now affirm.

As background, ODP is responsible for the administration and oversight of Medical Assistance (MA) Programs for home and community based services (HCBS), specifically the Consolidated Waiver Program, the P/FDS Waiver Program, and the Adult Autism Wavier Program (collectively the Waivers

Programs).[1]    Through the Waivers Programs, individuals who are eligible to receive healthcare services in an institution for the intellectually disabled may instead receive comparable services in their home and community.  Within the Department's ODP, the Bureau of Autism Services (BAS) oversees the Adult Autism Waiver Program, and the Bureau of Supports for People with Intellectual Disabilities (BSPID) oversees the Consolidated Waiver and P/FDS Waiver Programs.  A provider under the Adult Autism Waiver Program is referred to as a Supports Coordination Agency (SCA), 55 Pa. Code § 51.29, whereas a provider under the Consolidated Waiver or P/FDS Waiver Programs is referred to as a Supports Coordination Organization (SCO), 55 Pa. Code § 51.28.

Prior to Petitioner submitting the subject application for enrollment as an SCO under the Consolidated Waiver and P/FDS Waiver Programs, Petitioner operated as an SCA under the Adult Autism Waiver Program beginning in April 2013.  The Department requires SCAs to document their activities in the Home and Community Services Information System (HCSIS).[2]  HCSIS is the central database that providers and the Department use in order to verify that a provider provided services and to substantiate billing, so that the Department may render payment to the provider.  In October 2013, BAS conducted an inspection of Petitioner's operations, including a review of service notes Petitioner entered into

---

[1] The Waivers Programs are approved by the United States Department of Health and Human Services' Center for Medicare and Medicaid Services under Section 1915(c) of the Social Security Act, 42 U.S.C. § 1396n(c).

[2] *See* 55 Pa.  Code § 51.29(c)(18), pertaining to SCA requirements for the Adult Autism Waiver Program.  The Department's regulations provide similar requirements for SCOs.  *See* 55 Pa. Code § 51.28(m).

the HCSIS. As a result of the review, BAS identified service notes that were either missing or lacked sufficient specificity. BAS personnel met with Petitioner on January 7, 2014, to address the deficiencies identified during the inspection, and on January 16, 2014, BAS sent Petitioner a formal Corrective Action Plan (CAP), which the Department sometimes also refers to as a "Plan of Correction" (PoC).[3] As part of the CAP, BAS requested that Petitioner amend 247 service notes in HCSIS and provide BAS with those revisions on an Excel spreadsheet. Although BAS set January 31, 2014, as the deadline for complying with the CAP, BAS ultimately extended the deadline until April 30, 2014. Petitioner provided BAS with amended service notes on an Excel spreadsheet by the deadline for the submission, but Petitioner did not enter the amended service notes into HCSIS by that date. On May 2, 2014, BAS directed Petitioner to enter all of the amended service notes into HCSIS. Petitioner did not have all of the amended service notes entered into the system until July 2014.

In January 2014, Petitioner also submitted an application to BSPID, seeking to become enrolled as an SCO under the Consolidated Waiver and P/FDS Waiver Programs. In June 2014, BSPID contacted BAS to discuss Petitioner's CAP and alleged noncompliance with the CAP. By notice dated August 25, 2014, the Department denied Petitioner's application and informed Petitioner that

> ODP cannot approve this application to become a qualified SCO due to failure to comply with Chapter 51 regulations and Waiver requirements.

---

[3] BAS issued its CAP pursuant to 55 Pa. Code § 20.52, which provides: "If, during an inspection, authorized agents of the Department observe items of noncompliance with licensure or approval regulations, the legal entity shall submit an acceptable written plan to correct each noncompliance item and shall establish an acceptable period of time to correct these items."

As part of the qualification process within ODP, an inquiry was made with [BAS] in regards to the [SCA] services that your organization provides. According to BAS, your SCA was monitored on October 22, 2013, which resulted in a [CAP] being issued on January 16, 2014. The CAP was to be completed by January 24, 2014. To date your SCA has failed to comply with items on the CAP. [BAS'] Adult Autism Waiver says "When BAS identifies that a provider is not meeting waiver requirements, BAS requires the provider to develop a CAP and monitors whether the plan is implemented."

(Reproduced Record (R.R.) at 165a.) The notice also informed Petitioner that the requirements and qualifications to be a qualified SCO for ODP include cooperating "with monitoring conducted by ODP or its designees, which includes complying with the CAP." (*Id.*) The notice also informed Petitioner that 55 Pa. Code Chapter 51, pertaining to ODP Home and Community-Based Services, requires providers, including SCOs and SCAs, to complete and comply with any CAP;[4] remediate each finding discovered during a monitoring within 30 days of receipt of the CAP;[5] and submit information which supports that the claim for payment is true, accurate, and complete.[6] (*Id.*)

Petitioner appealed the denial to BHA. An ALJ conducted a hearing on November 12, 2015, at which the Department presented the testimony of Patrick Keating, Human Services Program Representative, BAS; Heather Ruppe, Regional Supervisor, BAS; and Sonya Hipple, Human Services Representative,

---

[4] *See* 55 Pa. Code § 51.13, pertaining to ongoing responsibilities of providers.

[5] *See* 55 Pa. Code § 51.24, pertaining to provider monitoring.

[6] *See* 55 Pa. Code § 51.15, pertaining to provider records.

4

ODP. Petitioner presented the testimony of Casey Ball, Petitioner's CEO. At the hearing, the Department took the positon that it correctly denied Petitioner's application because Petitioner failed to comply with a CAP relating to Adult Autism Waiver services when it did not enter amended service notes into HCSIS by April 30, 2014. Petitioner countered that the Department incorrectly denied its application because (1) the Autism Waiver CAP only required her to submit the amended service notes on an Excel spreadsheet and did not require Petitioner to enter the amended service notes in HCSIS; and (2) if the CAP required Petitioner to enter the amended service notes in HCSIS, then it substantially complied with the CAP by submitting the amended service notes in the Excel spreadsheet. The ALJ found that the CAP required Petitioner to enter the amended service notes into HCSIS by the deadline of April 30, 2014. Petitioner failed to do so, and, therefore, Petitioner violated the CAP.[7] As to Petitioner's reliance on the concept of

---

[7] The ALJ made the following findings of fact regarding the requirements for compliance with the CAP:

19. On January 16, 2014, Mr. Keating sent [Petitioner] an email with three attachments: (1) the CAP form, (2) a Word document listing specific requirements [Petitioner] needed to satisfy in order to comply with the CAP, and (3) an Excel spreadsheet containing the service notes that needed to be corrected.

20. The CAP form reads, with regard to "All participants," "Documentation to substantiate that a service was provided as billed did not include a description of what occurred during the service delivery," and includes the comment, "See attached."

. . . .

22. The Word document reads, "Using the Excel file attached to P[o]C [Petitioner] will update and modify service notes to justify billing claims. Any service note that does not adequately justify units billed will result in all or part of those claims being voided. *[Petitioner] must enter/update/revise service notes in*

**(Footnote continued on next page…)**

5

substantial compliance, the ALJ also concluded that whether Petitioner performed some parts of the CAP did not negate the fact that it did not fully comply with the CAP. The ALJ also found that Petitioner's "noncompliance with the BAS CAP constituted multiple regulatory violations and conflicted with the 'Assurances and Attestations' required in the application for the Consolidated and P/FDS Waivers." (R.R. at 194a.) Furthermore, the ALJ found that "it was reasonable for the Department to believe that Petitioner would not be able to comply with the Department's regulations if permitted to provide services under the Consolidated

**(continued…)**

> *HCSIS and also paste the updated notes in the Excel file and return it with the PoC.* [The] PoC will not be accepted without this step."
>
> 23. The Word document summarized what was discussed at the January 7, 2014, meeting between Mr. Keating and Ms. Ball.
>
> . . . .
>
> 41. Ms. Ball finished entering the revised service notes into HCSIS in July 2014.
>
> . . . .
>
> 44. Mr. Keating testified credibly.
>
> . . . .
>
> 47. Ms. Ball did not testify credibly with regard to the Word document being attached to Mr. Keating's January 16, 2014, email or with regard to when she updated the service notes in HCSIS.

(ALJ's decision at 4-5, 7, attached to Petitioner's Br. as Appendix "A" (emphasis added) (internal record citations omitted).) With regard to finding of fact number 47, Ms. Ball testified before the ALJ that she received Mr. Keating's email, but that the email did not include the Word document as an attachment. The ALJ, in her decision, wrote: "the print-out of the email confirms that the January 17, 2014, email did in fact contain the Word document. The ALJ finds Ms. Ball's testimony regarding her failure to receive the Word document not credible." (*Id.* at 11.) Although the ALJ referred to an email dated January *17*, 2014, it is apparent from the record that the ALJ meant to refer to the email dated January *16*, 2014.

and P/FDS Waivers." (*Id.*) For those reasons, the ALJ concluded that the Department did not abuse its discretion in denying Petitioner's application and recommended that Petitioner's appeal be denied.

By order dated February 1, 2016, BHA's Chief Administrative Law Judge adopted the ALJ's recommendation in its entirety, thereby denying Petitioner's appeal. Petitioner then petitioned this Court for review.

On appeal,[8] Petitioner argues that the Department erred in denying Petitioner's application to become a provider under the Consolidated Waiver and P/FDS Waiver Programs because (1) Petitioner substantially complied with BAS' CAP and (2) the Department denied the application based on Petitioner's "nonmaterial and inadvertent delay" in entering the amended service notes into HCSIS. (Petitioner's Br. at 6.) The Department counters generally by arguing that it properly exercised its discretion under 55 Pa. Code § 1101.42 when it denied Petitioner's application, because the Department had previously cited Petitioner for regulatory violations regarding its existing operation under the Adult Autism Waiver Program and Petitioner failed to comply with the CAP relating to those regulatory violations. With regard to Petitioner's specific arguments, the Department contends that Petitioner was required to comply fully with the CAP, and, therefore, it is irrelevant whether Petitioner substantially complied or whether

---

[8] The Commonwealth Court's standard of review on appeal from an order of BHA "is limited to determining whether the adjudication is supported by substantial evidence, whether the decision is in accordance with the applicable law, or whether constitutional rights are violated." *Cambria Cnty. Home and Hosp. v. Dep't of Pub. Welfare*, 907 A.2d 661, 667 (Pa. Cmwlth. 2006).

Petitioner's failure to enter the amended service notes into HCSIS constituted a nonmaterial violation of the CAP.[9]

At the outset, we note that 55 Pa. Code § 1101.42(a), pertaining to prerequisites for participation in the MA Program, provides that, in order to be eligible, "Commonwealth-based providers shall be currently licensed and registered or certified . . . by the appropriate State agency, complete the enrollment form, sign the provider agreement specified by the Department, and meet additional requirements described in this chapter and the separate chapters relating to each provider type." The regulations further provide that even if a prospective provider meets those requirements, "[t]he Department may at its discretion refuse to enter into a provider agreement." *Id.* This Court has recognized the Department's lawful discretion in this area and has held that prospective entities have no protected property interest in, nor entitlement to participate in, the MA Program. *See Stanton-Negley Drug Co. v. Dep't of Pub. Welfare*, 943 A.2d 377, 384 (Pa. Cmwlth. 1984).

Although Petitioner appears to attempt to frame the issue as whether the Department committed an error of law in denying its application to participate in the Consolidated Waiver and P/FDS Waiver Programs, the issue is more appropriately framed as whether the Department abused its discretion in so doing. Thus, we will consider Petitioner's arguments in that context.

With regard to its "substantial compliance" argument, Petitioner characterizes the "sole legal issue [as] whether the delay in loading the information

---

[9] The parties do not appear to dispute that Petitioner provided amended service notes to BAS on an Excel spreadsheet by the amended deadline of April 30, 2014.

into HCSIS constituted noncompliance with the CAP." (Petitioner's Br. at 15.) Petitioner maintains that the purpose of the CAP was to develop a course of action to provide more specificity in Petitioner's service notes. Petitioner contends that it substantially performed its obligation under the CAP by submitting the amended service notes on the Excel spreadsheet.

Petitioner's contention that it substantially complied with the CAP such that the Department improperly denied its application is without merit. In *State College Manor, Ltd. v. Department of Public Welfare*, 498 A.2d 996 (Pa. Cmwlth. 1985), we explained:

> [T]he equitable doctrine of substantial performance may excuse unimportant omissions with regard to the terms or requirements of a contract between two parties; the doctrine of substantial performance will not excuse, however, failures of omission, important or otherwise, with regard to the requirements of a substantive regulation having the force and effect of law. Strict compliance with the requirements of statute and of the regulations duly promulgated in accordance therewith is mandatory; substantial compliance is insufficient.

*State College Manor*, 498 A.2d at 999. As an SCA, Petitioner was required to comply with the Department's applicable regulations, including documenting activities in HCSIS, developing and implementing timely a CAP to correct deficiencies, completing and complying with any CAP as required by the Department, and ensuring that deficiencies are successfully remediated through a CAP. *See* 55 Pa. Code §§ 51.13, 51.29(c)(18), 51.152(a)(7), 51.24(f). These

9

substantive regulations require strict compliance, and the equitable doctrine of substantial compliance is inapplicable.[10, 11]

Petitioner's contention that its delay in entering the amended service notes in HCSIS constituted an immaterial and inconsequential violation of the CAP based on contract principles, such that the Department improperly denied its application, is equally without merit. Petitioner asks the Court to apply to the CAP the Restatement (Second) of Contracts § 241 (1981), relating to the circumstances significant in determining whether a failure is material. As noted above, substantive regulations require strict compliance. Petitioner's argument that the CAP is nothing but a contract is belied by the Department's regulations. The Department's regulations, not a contract between the Department and a provider, dictate what a provider's ongoing responsibilities are under the Waiver Programs. *See* 55 Pa. Code §§ 51.11-.34. We agree with the Department that the CAP is a regulatorily-mandated legal mechanism used by the Department to ensure that a provider which is not in compliance with Departmental regulations is put on notice

---

[10] Even if substantial compliance were sufficient, we would conclude that Petitioner's failure to enter the amended service notes into HCSIS for several weeks following the deadline for complying with the CAP does not constitute "substantial compliance."

[11] Petitioner, as part of its argument, also maintains that it submitted a timely response to the CAP and that there was not an explicit reference in the CAP mandating that Petitioner enter the amended services notices in HCSIS to fulfill the requirements of the CAP; BAS attached an Excel spreadsheet to the CAP; and BAS requested Petitioner to return the amended service notes to BAS in the format of the Excel spreadsheet for the convenience of both of the parties. Petitioner does not directly challenge the ALJ's findings that the Word document memorialized the discussion on January 7, 2014, between Ms. Ball and Mr. Keating, and the Word document provides that Petitioner must enter the amended service notes in HCSIS. Petitioner appears to contend, however, that it was not required to enter the amended service notes in HCSIS. The ALJ found otherwise, as discussed in footnote 7, above.

10

and given an opportunity to correct deficiencies and is not a contract. Petitioner, therefore, was required to comply fully with the CAP, including entering amended service notes in HCSIS by the deadline for submitting the CAP.[12, 13]

For the reasons set forth above, we cannot conclude that the Department abused its discretion when it cited Petitioner's original failure to enter sufficient service notes into HCSIS and subsequent failure to comply with the CAP as the basis for denying Petitioner's application. We agree with the Department that it properly exercised its regulatory discretion when it denied Petitioner's enrollment application for the Consolidated Waiver and P/FDS Waiver Program, because the MA regulations grant the Department wide discretion to refuse to enter into new provider agreements, and prospective providers have no entitlement to, or property interest in, expanded participation in the MA Program. *See* 55 Pa. Code § 1101.42; *Stanton-Negley*, 943 A.2d at 384. The Department, in denying the

---

[12] Even if we were to consider the CAP under contract principles, our result would be the same. A CAP is developed and implemented to allow a provider to correct its earlier failure to strictly comply with the Department's regulations, and it is clear that Petitioner's continued failure to comply with 55 Pa. Code § 51.29(c)(18), requiring service notes to be entered into HCSIS, cannot be dismissed as merely immaterial or inconsequential when that lack of sufficient service notes in HCSIS was the basis for the CAP in the first place.

[13] In support of its argument that the delay in entering the information into HCSIS was a non-material violation of the CAP under the Restatement (Second) of Contracts § 241, Petitioner asserts that BAS was not deprived of any expected benefit because the goal of the CAP was to remediate specificity issues in service notes and provide a plan to correct alleged lack of detail; the delay in entering the amended service notes into HCSIS had no adverse effect on BAS, because Petitioner already had provided BAS the amended service notes in the Excel spreadsheet; the Department's strict interpretation of the CAP resulted in an unjust forfeiture when it came to Petitioner's right to participate in ODP's Waiver Programs; Petitioner cured any breach of the CAP by entering the information in HCSIS, resulting in no prejudice to BAS; and Petitioner made every effort to resolve the matter in good faith. Because we conclude that contract principles are inapplicable, these contentions are not relevant to the Court's analysis.

11

application, reasoned that Petitioner's failure to comply with regulations pertaining to the Adult Autism Waiver Program, in conflict with Petitioner's required "Assurances and Attestations," and Petitioner's failure to comply with BAS' CAP made it likely that Petitioner would have similar compliance issues if approved as a provider under the Consolidated Waiver and P/FDS Wavier Programs. These concerns constituted a proper basis for the Department to exercise its discretion and deny Petitioner's application.[14]

Accordingly, we affirm the Department's order denying Petitioner's appeal.

_____
P. KEVIN BROBSON, Judge

---

[14] To the extent that Petitioner suggests that the Department's actions constitute a bad faith exercise of the government agency's powers, we disagree. It is the Department's responsibility to oversee the Waiver Programs, including approving providers. The Department merely exercised its discretion. Petitioner presented no evidence of bad faith on the part of the Department.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Casey Ball Supports         :
Coordination, LLC,            :
              Petitioner      :
                          :
        v.                  :    No. 308 C.D. 2016
                          :
Department of Human Services,     :
            Respondent    :

# **O R D E R**

AND NOW, this 18th day of April, 2017, the order of the Chief Administrative Law Judge of the Department of Human Services, Bureau of Hearings and Appeals, dated February 1, 2016, which adopted the recommendation of an Administrative Law Judge, thereby denying Petitioner's appeal, is AFFIRMED.

_____
P. KEVIN BROBSON, Judge