# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Life Force Eldercare Corporation,    :
             Petitioner    :
                           :   No. 1281 C.D. 2023
                           :
             v.                :
                           :   Argued:  November 6, 2024
Department of Human Services,    :
             Respondent    :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE STACY WALLACE, Judge
               HONORABLE MATTHEW S. WOLF, Judge

## ***OPINION NOT REPORTED***

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                             **FILED:  September 26, 2025**

Life Force Eldercare Corporation (Life Force) has petitioned this Court to review an order issued by Respondent Department of Human Services (Department) on October 26, 2023 (Final Order).  Through that Final Order, Secretary of the Department Valerie A. Arkoosh granted Life Force's application for reconsideration but nonetheless affirmed an order issued by the Department's Bureau of Hearings and Appeals (BHA) on June 8, 2023.  In doing so, Secretary Arkoosh upheld the results of an audit that determined that Life Force had failed to submit adequately detailed bills to the Department's Office of Long-Term Living

(OLTL) and, thus, should not have been paid for rendering certain patient care services. We reverse.

## I. BACKGROUND[1]

Generally speaking, Life Force offers in-home support for the elderly and infirm through live-in aides who provide their clients with round-the-clock, in-person care. Of particular relevance to this matter, Life Force participates as a provider in the aging waiver program (Program), which allows eligible Pennsylvanians to receive Medicaid-funded, at-home or community-based care, instead of being treated in a nursing facility. This Program is jointly administered by the OLTL and the federal government's Center for Medicare and Medicaid Services. *See* 42 U.S.C. §§ 1396-1396v; 62 P.S. §§ 441.1-449.2.[2] Through the Program, the Department has authorized Life Force to provide clients with a maximum of 16 hours of compensated care per day.[3]

On November 14, 2017, the Department's Bureau of Financial Operations (BFO) formally notified Life Force that the BFO would be conducting an audit of Program-related service claims that Life Force had previously submitted to, and had been paid for by, the Department. The BFO subsequently issued its final audit on April 9, 2018, which covered the time period between July 1, 2015, and June 30, 2017. Therein, the BFO concluded that Life Force had submitted numerous claims that were not supported by adequate documentation and had consequently received an overpayment of approximately $1,734,159 during the audited period.

---

[1] We draw the substance of this section from BHA Administrative Law Judge (ALJ) David C. Howe's Adjudication, which was adopted in full by the BHA and affirmed on administrative appeal through the Final Order. *See generally* Adjudication, 5/31/23.

[2] Act of June 13, 1967, P.L. 31, *as amended*.

[3] In other words, Life Force provides Program clients with at least eight uncompensated hours of care per day.

The OLTL then sent a letter to Life Force on June 27, 2018, informing Life Force that it intended to recoup that overpayment.

In response, Life Force filed an appeal with the BHA on July 10, 2018. ALJ Howe then held an evidentiary hearing on May 26, 2021, and thereafter issued an adjudication through which he recommended that the BHA deny Life Force's appeal. This recommendation was based primarily upon ALJ Howe's determination that Life Force had failed to submit billing paperwork that satisfied the documentation requirements imposed through the Department's administrative regulations and bulletins. Specifically, ALJ Howe held that Life Force's "timesheets and activity logs[] are not adequate because they specifically do not have time-in and time-out notations" for each discrete service its aides had provided to Program clients during the audited period and, thus, had failed to properly substantiate the "duration" of those services. Adjudication, 5/31/23, at 45-47.[4] The BHA then issued an order on June 8, 2023, through which it adopted ALJ Howe's adjudication in full. Life Force then sought reconsideration of BHA's order on June 23, 2023, but its application was denied by Secretary Arkoosh via the Final Order on October 26, 2023. This appeal to our Court followed shortly thereafter.

---

[4] ALJ Howe also broadly stated that "[i]n looking at the documentation that Life Force maintained, there is simply no way to ensure that services were provided according to the correct type, scope, amount, duration, and frequency[,]" as required under Section 52.42(d) of the Department's administrative regulations, but he only provided specific reasoning regarding Life Force's putative noncompliance with the duration requirement. *See* Adjudication, 5/31/23, at 44-47.

3

## II. DISCUSSION[5]

Life Force challenges the Final Order on multiple bases, which we summarize as follows. First, Life Force asserts that the Department's relevant regulations and bulletins do not explicitly require round-the-clock care providers to "clock in" and "clock out" for each completed task or activity. Life Force's Br. at 26-27, 29-35. Second, Life Force maintains that Secretary Arkoosh exhibited bias by denying Life Force's reconsideration application without holding any additional proceedings or issuing findings of fact and conclusions of law. *Id.* at 35-37. Finally, Life Force argues that the Department abused its discretion by imposing retroactive financial sanctions, rather than placing Life Force in a forward-looking corrective action program. *Id.* at 37-43.[6]

We need only address Life Force's first argument in order to dispose of this appeal. As mentioned *supra,* the crux of the BHA's June 8, 2023 order was that the OLTL was entitled to recoup already paid funds from Life Force, because Life Force had failed to submit billing paperwork that showed when its aides had clocked in and clocked out for each service provided to Program clients during the audited

---

[5] Our standard of review regarding a final order issued by the Secretary of the Department "is limited to determining whether an error of law was committed, whether necessary findings of fact were supported by substantial evidence, [or] whether constitutional rights were violated." *Alsyrawan v. Dep't of Hum. Servs.*, 316 A.3d 1076, 1087 n.17 (Pa. Cmwlth.), *appeal allowed in part*, 329 A.3d 448 (Pa. 2024).

[6] Life Force also asserts in passing that ALJ Howe made erroneous evidentiary rulings, incorrectly concluded that the OLTL's service authorization forms (which the OLTL issues for each individual who receives treatment through the Program) do not constitute contracts, and failed to apply the correct burden of proof. Life Force's Br. at 12-13, 27-28. We deem these arguments waived, however, due to Life Force's failure to properly develop them in its brief. *See Ruiz v. Unemployment Comp. Bd. of Rev.*, 911 A.2d 600, 605 n.5 (Pa. Cmwlth. 2006) ("When issues are not properly raised and developed in a brief, or when the brief is inadequate or defective because an issue is not adequately developed, this Court will not consider the merits of the issue."); *Rapid Pallet v. Unemployment Comp. Bd. of Rev.*, 707 A.2d 636, 638 (Pa. Cmwlth. 1998) ("Arguments not properly developed in a brief will be deemed waived by this Court.").

period. *See* Adjudication, 5/31/23, at 43-47. This determination rested largely on two sources of authority. The first is Section 52.42(d) of the Department's administrative regulations, which states that "[t]he Department will only pay for a service in the type, scope, amount, duration and frequency as specified on the participant's service plan as approved by the Department." *Id.* at 44 (quoting 55 Pa. Code § 52.42(d)). The second is comprised of three Department-issued bulletins; these guidance documents[7] collectively expand upon Section 52.42(d) by defining the terms used therein, including "duration," and establish that services rendered through the Program are to be billed in units that are each 15 minutes long. *Id.* at 44-45 (citing and quoting OLTL Bulletin # 05-12-01, 51-12-01, 54-12-01, 55-12-01, 59-12-01; OLTL Bulletin # 05-13-02, 51-13-02, 54-13-02, 55-13-02, 59-13-02; and OLTL Bulletin # 05-13-05, 08-13-05, 11-13-05, 17-13-05, 19-13-05, 25-13-05, 26-13-05, 41-13-05, 51-13-05, 54-13-05, 55-13-05, 59-13-05).[8]

---

[7] As our Supreme Court has explained:
> Non-legislative rules—more recently couched (in decisions and in the literature) as "guidance documents" . . . "come in an abundance of formats with a diversity of names, including guidances, manuals, interpretive memoranda, staff instructions, policy statements, circulars, bulletins, advisories, press releases and others." Robert A. Anthony, Commentary, *A Taxonomy of Federal Agency Rules*, 52 ADMIN. L.REV. 1045, 1046 (2000).

*Nw. Youth Servs., Inc. v. Dep't of Pub. Welfare*, 66 A.3d 301, 310-11 (Pa. 2013).

[8] The Adjudication inexplicably contains incorrect identification numbers for each of these bulletins. *Compare* Adjudication at 44-45, *with* Department, Billing Instructions - Home and Community Based Waiver Provider's Billing of Procedure Codes Based on Authorized Service Plans through PROMISe™ OLTL Bulletin # 05-12-01, 51-12-01, 54-12-01, 55-12-01, 59-12-01 (June 5, 2012) (available at https://www.pa.gov/content/dam/copapwp-pagov/en/dhs/documents/docs/publications/ documents/forms-and-pubs-oltl/d_006000.pdf) (last visited Sept. 25, 2025); Department, Billing Instructions - Home and Community Based Waiver Provider's Billing of Procedure Codes Based on Authorized Service Plans through PROMISe™, OLTL Bulletin # 05-13-02, 51-13-02, 54-13-02, 55-13-02, 59-13-02 (February 7, 2013) (available at https://www.pa.gov/content/dam/copapwp-pagov/en/dhs/documents/docs/publications/

However, these sources do not support the BHA's conclusion that OLTL was entitled to recoup the aforementioned funds from Life Force. This is for several reasons. First, by its plain language,[9] Section 52.42(d) does not specifically require that a Program provider provide the Department with the specific start and finish times for each rendered service. *See* 55 Pa. Code § 52.42(d).[10] Second, the Department's regulations do not include a definition for "duration." Therefore, that term is properly interpreted in accordance with its generally understood meaning. *Dep't of Env't Prot. v. Clearfield Cnty.*, 283 A.3d 1275, 1284 (Pa. Cmwlth. 2022). Per Black's Law Dictionary, "duration" is defined as "[t]he length of time something

documents/forms-and-pubs-oltl/p_033872.pdf (last visited Sept. 25, 2025); and Department, Clarification of type, scope, amount, duration and frequency of services, OLTL Bulletin # 05-13-05, 08-13-05, 11-13-05, 17-13-05, 19-13-05, 25-13-05, 26-13-05, 41-13-05, 51-13-05, 54-13-05, 55-13-05, 59-13-05) (May 16, 2013) (available at https://www.pa.gov/content/dam/copapwp-pagov/en/dhs/documents/docs/publications/ documents/forms-and-pubs-oltl/p_034437.pdf) (last visited Sept. 25, 2025).

[9] In instances where a regulation's meaning is unambiguously clear, the plain language used therein, rather than an agency's reading thereof, controls interpretation of that regulation. *Lutheran Home at Kane v. Dep't of Hum. Servs.*, 318 A.3d 164, 180 (Pa. Cmwlth. 2024), *appeal granted sub nom. Lutheran Home at Kane & Siemon's Lakeview Manor Est. v. Dep't of Hum. Servs.*, 333 A.3d 305 (Pa. 2025); *see also Wheeling-Pittsburgh Steel Corp. v. Dep't of Env't Prot.*, 979 A.2d 931, 937 (Pa. Cmwlth. 2009) ("Statutory construction rules apply equally to the interpretation of administrative regulations."); *Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001) (cleaned up) (although a court must "listen attentively to what a [regulation] says[,] [a court] must also listen attentively to what it does not say"). Where that language is ambiguous, however, a court must "defer to an agency's interpretation of its own regulation[,] unless that interpretation is plainly erroneous or inconsistent with the regulation." *Corman v. Acting Sec'y of Pa. Dep't of Health*, 266 A.3d 452, 485 (Pa. 2021) (cleaned up). "An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 510 (Pa. Cmwlth. 2014). Furthermore, undefined terms in administrative regulations must be interpreted "according to rules of grammar and their common and approved usage." *Velazquez ex rel. Speaks-Velazquez v. E. Stroudsburg Area Sch. Dist.*, 949 A.2d 354, 358-59 (Pa. Cmwlth. 2008).

[10] We also note that such specific direction is similarly absent from the rest of Chapter 52 of the Department's regulations. *See generally* 55 Pa. Code Ch. 52.

lasts." *Duration*, Black's Law Dictionary (12th ed. 2024). Third, this generally understood definition of "duration" comports with the one contained in the relevant OLTL bulletin, which states that "[d]uration means that services are provided in the amount of time scheduled." OLTL Bulletin # 05-13-05, 08-13-05, 11-13-05, 17-13-05, 19-13-05, 25-13-05, 26-13-05, 41-13-05, 51-13-05, 54-13-05, 55-13-05, 59-13-05, Discussion, ¶4. Finally, the relevant OLTL bulletins establish that Program providers must bill for rendered services in terms of units that are each 15 minutes long, but do not expressly state that providers must also present information regarding precise start and finish times for each billed unit. *See* OLTL Bulletin # 05-12-01, 51-12-01, 54-12-01, 55-12-01, 59-12-01, Procedure; OLTL Bulletin # 05-13-02, 51-13-02, 54-13-02, 55-13-02, 59-13-02, Procedure.

Thus, the Department's regulations and bulletins only task Program providers with submitting information regarding the unit-based length of each discrete rendered service, which can be done without providing specific "clock in" and "clock out" times. In other words, the BHA's interpretation of the aforementioned "duration" billing requirement contravenes the plain language of the relevant Department bulletins[11] and regulations. Life Force therefore had no legal obligation to provide the OLTL with specific beginning and end times for each

---

[11] We recognize that Life Force does not challenge the overall enforceability of the Program billing directives contained in the OLTL's guidance documents. Nevertheless, we are compelled to remind the Department that it cannot take legally valid action against an individual or entity in response to noncompliance with standards established through guidance documents, unless those standards create binding norms and have been properly promulgated through the administrative rulemaking process. *See Pa. Sch. Bds. Ass'n, Inc. v. Mumin*, 317 A.3d 1077, 1106 (Pa. Cmwlth. 2024); *Victory Bank v. Com.*, 219 A.3d 1236, 1243 (Pa. Cmwlth. 2019); *Transp. Servs., Inc. v. Underground Storage Tank Indemnification Bd.*, 67 A.3d 142, 154 (Pa. Cmwlth. 2013); *Eastwood Nursing & Rehab. Ctr. v. Dep't of Pub. Welfare*, 910 A.2d 134, 142 (Pa. Cmwlth. 2006); *Borough of Pottstown v. Pa. Mun. Ret. Bd.*, 712 A.2d 741, 743 (Pa. 1998); *Dep't of Env't Res. v. Rushton Mining Co.*, 591 A.2d 1168, 1171 (Pa. Cmwlth. 1991).

discrete billed Program unit.  Given this, Secretary Arkoosh committed an error of law by upholding BHA's order.

### III. CONCLUSION

In accordance with the foregoing analysis, we reverse the Department's Final Order.[12]

---

**LORI A. DUMAS, Judge**

---

[12] As we have resolved this matter in Life Force's favor, we decline to address the remainder of its appellate arguments.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Life Force Eldercare Corporation,    :
             Petitioner    :
                          :   No. 1281 C.D. 2023
            v.            :
                          :
Department of Human Services,    :
             Respondent    :

# **O R D E R**

AND NOW, this 26th day of September, 2025, Respondent Department of Human Services' October 26, 2023 Final Order is REVERSED.

 

**LORI A. DUMAS, Judge**

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Life Force Eldercare Corporation, :
                      Petitioner : 
                                :
       v. :
                                  :
Department of Human Services, : No. 1281 C.D. 2023
                  Respondent : Argued: November 6, 2024

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE FIZZANO CANNON                FILED: September 26, 2025

       I respectfully dissent. The record reveals that the defects in the time records maintained by Life Force Eldercare Corporation (Life Force) for the audited time period extended far beyond merely failing to note clock-in and clock-out times. By any reasonable measure, both Life Force's records and its hearing evidence were woefully inadequate to establish the services performed and time spent on various tasks by the paid caregivers. Accordingly, the Department of Human Services (Department) is entitled to recoup the fees it paid to Life Force for the relevant time period, and its order of recoupment should be affirmed.

       Facially, the 2012 Department bulletins require, either expressly or by necessary implication, that billing records must be kept by billing code and by task, specified in 15-minute increments. The 2012 bulletin requires "providers [to] use

the procedure codes, rates, and units as identified" by the Department. Reproduced Record (R.R.) at 87a. "For billing purposes for waiver services, 15 minutes equals one unit. Home and Community Based waiver providers [(of which Life Force is one)] are able to bill for one unit when a billable activity occurs for more than 7 1/2 minutes. A billable activity must be properly documented." *Id.* The clear import of this requirement is that a provider must have backup time records for every 15-minute unit of employee time for which reimbursement is sought from the Department.

No reason appears in the record why the regulations should not apply to Life Force, nor does Life Force offer any detailed analysis in its brief.[1] Life Force is providing services pursuant to authorization from the Department. Life Force agreed to, and must, comply with the applicable billing requirements in order to qualify for reimbursement from the Department. R.R. at 86a-87a. Nothing in the record suggests that the Department ever excused Life Force from following the regulations and policies in documenting employee time, yet the time recording checklists used by Life Force failed to indicate how much time was spent on any task or whether there was inactive time. *See, e.g.*, *id.* at 28a. The Department's audit identified the following glaring deficiencies, far beyond failures to clock in and out:

> • Timesheets did not document the actual time when services were delivered; management billed PROMISe based on the service authorization.

---

[1] I note that Life Force's brief offers little useful discussion of the potentially applicable regulations and policies. Life Force asserts that the regulations are not applicable and/or that no applicable regulations exist, but it fails to offer any analysis of the language of the regulations and policies cited by the Department or any explanation of why those regulations and policies should not apply to Life Force's business, particularly in light of Life Force's agreement to abide by them. Further, Life Force's reliance on Department claim forms in its reply brief is misplaced; those forms are different from the time records supporting them.

• Some timesheets and/or daily activity notes were missing.

• One caregiver submitted timesheets which were photocopied and were the same as other timesheets submitted with only the dates changed.

• Life Force's management did not adequately review claim documentation prior to billing PROMISe,

R.R. at 46a. As the Department's Chief Administrative Law Judge (ALJ) explained,

[c]ase law allows that "the Department is afforded deference in the interpretation of its own regulations if the interpretation is not unreasonable or inconsistent with the underlying regulation." *Mulberry Sq. Elder Care & Rehab*[. *Ctr.*] *v. Dep't of Hum*[.] *Serv*[*s.*], 191 A.3d 952, 963 (Pa. Cmwlth. 2018) [(]*citing*[] *Presbyterian Med. Ctr. of Oakmont v. Dep't of Pub*[.] *Welfare*, 792 A.2d 23, 27 (Pa. Cmwlth. 2002)[)]. ***In looking at the governing statutes, regulations and Bulletins, it is clear that the Department is not being unreasonable in its interpretation that the documentation submitted by Life Force for its PROMISe™ claims and the . . . audit, namely the timesheets and activity logs, are not adequate*** because they specifically do not have time-in and time-out notations. ***By the testimony of Life Force's own witnesses, they bill arbitrary time frames*** which meet the authorized hour totals because ***they do not ask their employees to keep track of their time on a daily basis***. Chapter 52 [of the Pennsylvania Code, which provides the governing regulations,] requires that providers keep and maintain appropriate documentation needed to verify that a service has been ordered, has been rendered and has been billed for appropriately. In ***looking at the documentation that Life Force maintained, there is simply no way to ensure that services were provided according to the correct type, scope, amount, duration, and frequency. [Life Force] did not meet its burden to show that its PROMISe^{TM} claims were supported by adequate documentation***.

Certified Record (C.R.) at 2693 (ALJ Op.) (emphasis added).

Life Force's documentation requirement is contractual. Notably, the Department's 2013 policy amendment provided, in pertinent part, that program participants "must strictly adhere to regulatory requirements; substantial compliance will not do." C.R. at 2693 (PA DPW (OHS) Dep't of Aging Off. of Long-Term Living Bulletin # 05-13-05, 08-13-05, 11-13-05, 17-13-05, 19-13-05, 25-13-05, 26-13-05, 41-13-05, 51-13-05, 54-13-05, 55-13-05, 59-13-05, Issued May 16, 2013 Effective May 26, 2013) (citing *Casey Ball Supports Coordination, LLC v. Dep't of Hum. Servs.*, 160 A.3d 278, 284 (Pa. Cmwlth. 2017)). Life Force agreed to comply with the Department's regulations and policies for reimbursement but plainly failed to do so.

Moreover, Life Force does not assert any alternative quasi-contractual entitlement to retain the funds at issue, such as unjust enrichment or *quantum meruit*. Life Force merely suggests generally that, given the alleged 24-hour daily presence of its caregivers with their clients, of which only 16 hours are reimbursable in the first instance, the Department's clawback of the full amount paid for the audited period is unjust. Notably, however, the overarching basis for that assertion is Life Force's contention that, in essence, it had no prior notice that the Department would require maintenance of time records documenting specific tasks in 15-minute increments, even though the Department's policies expressly spelled out those requirements. That assertion is not only legally insufficient, as discussed below, but also bears no relation to any potential quasi-contract or equitable claim.

Although the ALJ held a hearing at which Life Force had an opportunity to present evidence, Life Force offered no testimonial evidence of the specific tasks performed by any of its caregivers coupled with the actual time spent on any of those tasks, in order to provide the information missing from its existing

time records. Rather, Life Force's Director of Operations (Director) testified generally about Life Force's business model, explaining that caregivers provide live-in service 24 hours a day, "that the caregivers do not document each individual task that they perform for a client[, and] that it has never been a requirement that the caregivers document each activity performed . . . ." C.R. at 2694. Further, although her testimony established her familiarity with and understanding of the Department's documentation requirements, the Director acknowledged that Life Force's caregivers "do not document the individual hours worked . . . and also do not document every time or every activity that the caregiver performs a task for the client." *Id.* at 2695-96.

Life Force also submitted a number of caregiver weekly activity logs, which were merely checklists of activities allegedly performed, but without any time records of the durations of any of those activities. *See id.* at 749-1194 & 2698. These were the very records that failed to comply with the Department's documentation requirements. Life Force presented no witness testimony or other record evidence substantiating the duration of *any* specific task performed by any caregiver. Thus, not only did Life Force fail to comply with its documentation obligation in the first instance, but it compounded that failure by failing to provide the missing information through witness testimony or otherwise before the ALJ. In short, the problem was not merely a technical one arising from Life Force's failure to demonstrate that it was maintaining adequate records (although maintaining such records was an express contractual requirement), but also, and more importantly, *a substantive failure to demonstrate that its caregivers were actually performing the services that they were engaged to provide* and for which Life Force obtained reimbursement from the Department.

Notably, Life Force did not offer or ask to correct its defective documentation so as to qualify to retain the payments it had received from the Department; indeed, it did not posit that it would be able to do so.[2] Nonetheless, Life Force now complains that the Department should have opted to enter into a prospective corrective action plan instead of seeking recoupment. In light of the Director's express testimony to her awareness and understanding of the Department's time documentation policies and Life Force's failure to comply with those known timekeeping policies, it is difficult to see why the Department should have exercised its discretion in favor of a prospective correction plan rather than recoupment.

*Children's Hospital of Philadelphia v. Department of Public Welfare*, 621 A.2d 1230 (Pa. Cmwlth. 1993), offers an instructive contrast to this matter. There, the issue was sufficient documentation for claims seeking medical assistance payments from the Department of Public Welfare (DPW) for treatment rendered. The applicable DPW regulation required providers to retain specific documentation, including, *inter alia*, "documentation of the medical necessity of a rendered, ordered or prescribed service." *Id.* at 1231 (quoting 55 Pa. Code § 1101.51(e)(1)(x)) (additional quotation marks omitted). The DPW conducted a "retroactive review" of the hospital's documentation and demanded recovery of payments previously made to the hospital, on the basis that there were no written physician orders for the provided medical services at issue. *Id.* In *Children's Hospital*, this Court reversed the DPW's order for recovery of payments, based on two factors: (1), there was no dispute that the medical services were provided and were necessary, and (2) the

_____

[2] The necessity of maintaining proper time records is underscored here by the practical difficulty in asking caregivers to look back several years and correct their time records by filling in 15-minute increments of the tasks they performed in the distant past.

regulation at issue did not expressly require retention of the actual written physicians' orders. *Id.* at 1232.

Here, by contrast, Life Force has failed either to document sufficiently or to establish by other substantial evidence that the paid-for services were actually provided. Moreover, the Department's written policy, which Life Force agreed to follow and of which its Director was admittedly aware, specifically required discrete task documentation in 15-minute increments. Thus, neither of the factors that justified denying recoupment in *Children's Hospital* was present here.

Life Force stresses that it has been in business for over 34 years, has always done its documentation the same way, and has never received pushback before. However, the Department audited Life Force in 2018 for the years of 2015-17, a few years after 2012 when the first policy bulletin was issued requiring task-based time records in 15-minute increments. *See* R.R. at 40a & 83a-85a. The length of time Life Force was in business before the 2012 policy was issued is irrelevant to the requirements applicable to timekeeping thereafter. Life Force's argument is analogous to a taxpayer taking the same deduction for 30 years and then complaining when an audit disallows the deduction for a tax year after an amendment to the tax code has eliminated that deduction.

Life Force also argues that its business model cannot reasonably accommodate the kind of billing the Department is requiring. Life Force suggests its employees are engaged in tasks too diverse to document every specific activity in 15-minute increments. This argument is not persuasive. It is true that Life Force will need to establish new protocols for its employees to track their time, and documenting will be more demanding than the amorphous records Life Force historically maintained, but it is certainly achievable. *See, e.g.*, R.R. at 29a (sample

task checklist in 15-minute segments). The Department's time record requirements are analogous to those of attorneys with billable hours separated into tenths of an hour. Such billing is a necessary fact of professional life, because clients will not pay for time that is not documented. Neither will the Department – nor should it.

Life Force suggests that because its employees must be on site and available to their assigned clients 24 hours a day while in clients' homes, they are, perforce, working all the time, even if just by being present. That assertion may or may not be true in a given instance, but it does not diminish the Department's specific requirements in its regulations and policies governing billing and time records. ***Life Force agreed to and is bound by those requirements as a prerequisite to obtaining the Department's authorization to be a provider*** in the waiver program. The Provider Agreement includes, in pertinent part, Life Force's express agreement that it "will comply with all applicable State and Federal laws[,] regulations, and policies which pertain to participation in the Pennsylvania Medical Assistance Program." R.R. at 11a.

Life Force also posits that waiting until 2018 to request an audit for earlier years was unfairly prejudicial. However, auditing Life Force's records for 2015-17 in 2018 is not the sort of delay that would support a laches argument. Neither is conducting an audit three to five years after the inception of new time documentation policies. Notably, Life Force offers no legal support for its suggestion that there was any undue delay by the Department in auditing time records. Moreover, it is important to note that the Department's regulations and policies required Life Force to retain records for at least five years. R.R. at 109a. That requirement, together with the Department's regulation governing audits, *id.*,

constituted notice to Life Force that it could be audited regarding records and billing practices going back several years.

In essence, Life Force's arguments boil down to an assertion that the Department acted unfairly by finding retroactively that Life Force's time records were insufficient, because, despite its Director's awareness of the Department's timekeeping requirements, Life Force insists it was not on notice beforehand that its longstanding time recording practice was no longer acceptable for purposes of reimbursement under the Department's waiver program. As explained above, however, the Department's 2012 policy bulletin and the 2013 amending bulletins unequivocally required tracking of employee by specific tasks in 15-minute increments beginning not later than 2012. R.R. at 83a-97a. After the 2012 policy's issuance, and especially after the 2013 policy clarification bulletins, Life Force continued its past practice of amorphous timekeeping at its peril.

Life Force bore the burden to prove it had supported its reimbursement claims with sufficient documentation. *See* C.R. at 2694 (ALJ Op.). Life Force's documentation failure was not a technical defect, but a fundamental substantive one, which, as the Department's Chief ALJ explained, left the Department with "no way to ensure that services were provided according to the correct type, scope, amount, duration, and frequency." *Id.*

For these reasons, I dissent and would affirm the Department's order for recoupment.

_____
CHRISTINE FIZZANO CANNON, Judge


Judges Wojcik and Wolf join in this dissent.